No. 13096

IN THE SUPREME COURT OF THE STATE OF MONTANA

---

IN THE MATTER OF THE PETITION OF
LEON O. MEIDINGER,

Petitioner.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Petitioner:

Moses, Kampfe, Tolliver and Wright, Billings,
Montana
Bruce Barnard argued, Billings, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas A. Budewitz, Assistant Attorney General,
argued, Helena, Montana
William Krutzfeldt, County Attorney, argued, Miles
City, Montana

---

Submitted: August 9, 1975

Decided: SEP 11 1975

Filed: SEP 11 1975

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an original proceeding wherein petitioner seeks a writ of habeas corpus. Upon the filing of the petition this Court ordered an adversary hearing to be held on July 30, 1975, and that copy of the petition, memorandum in support, and copy of the order setting the hearing be served upon the attorney general and the district judge before whom the district court proceedings were had. Such adversary hearing was held and a period of ten days granted counsel for submission of briefs. The briefs have been filed and the matter is now before the Court for decision.

Petitioner asserts that on July 9, 1973, he was convicted of the crime of burglary in the first degree, and sentenced to eight years in the state penitentiary, all but two years being suspended. The sentence commenced on November 1, 1971, and with good time earned at the prison his probation was due to expire on May 5, 1979.

As hereafter appears in the district court's findings of fact, petitioner was previously tried for the same crime, convicted, and sentenced but that conviction was set aside by the federal court and on the 1973 conviction he was given credit for the time served on the previous conviction from November 1, 1971.

Petitioner was placed on probation under the supervision of the Board of Pardons and Parole and was assigned to the specific supervision of Mr. Philip E. Sanderson, a parole and probation officer from Billings.

On March 17, 1975, Sanderson filed a violation report alleging certain violations of the terms and conditions of probation had been committed by petitioner.

That report of violation of the terms and conditions of his parole were:

1) State Rule #1 - Respect and obey law - On 12/8/1974, he pled guilty to a charge of disturbing the peace at Bridger, Montana, and was fined $100.

2) State Rule #3- Departure from assigned district without permission - On 1/4/1975 he was arrested in Elko, Nevada, and did not have permission from his probation officer to leave the state. On 2/22/1975 he was in the city of Santa Monica, California, when he was supposed to be in Clovis, New Mexico, as stated on his travel permit which was issued by his parole officer for travel by air, but instead he took his own car. (Noteworthy here, when arrested in Santa Monica he had thirty-five $100 bills).

3) State Rule #5 - Possession of burglary tools or deadly weapons - On 2/22/1975, when he was arrested by the Santa Monica police in his room were an instrument for listening to police calls, one handgun case, set of alarm jumper cables, one Ace Lock Pick and one Ace Hollow Bit.

4) State Rule #6 - Use to excess of beer or intoxicating liquors - On 3/6/1975, he reported to his parole officer noticeably intoxicated, smelled of liquor on his breath, and his speech was slurred.

5) State Rule #7. - Steady employment. - He refused to fill out monthly reports showing his sources of income. At no time has his parole officer known of his holding a job, but still manages to support his family. He stated to the officer that his wife was the owner of a bar and she was supporting him.

The parole officer recommended petitioner's suspended sentence be revoked.

The county attorney filed a petition for the imposition of final judgment and sentence based upon the foregoing report.

- 3 -

A motion to dismiss was filed by petitioner's counsel; a hearing was set for May 7, 1975, continued at the request of petitioner's counsel to May 19. On May 19 at the request of petitioner's counsel it was again continued to June 4. On that day the hearing was held, petitioner and his counsel were present. At the conclusion of the hearing the matter was taken under advisement and thereafter on June 20, 1975, the court entered an order and sentence revoking the suspended sentence of six years, giving credit for 618 days thereon, and depriving him of certain specified constitutional rights during the remaining term of his sentence. The court also made and entered findings of fact and conclusions of law. The findings were:

"I. Defendant was sentenced on July 9, 1973, on a guilty plea to the crime charged, burglary, to eight years in the State Penitentiary. The term was to commence November 1, 1971; and six years of the sentence was suspended. The sentence was drafted in that fashion so that the defendant would be given credit for time spent in the penitentiary, on a previous conviction of the same crime which was set aside by the Federal District Court, and would not have to serve any prison time on this conviction.

"II. That said defendant violated the terms and conditions of said parole in that he:

"1. Forfeited a $100.00 bond to a charge of disturbing the peace in Bridger, Montana, on December 8, 1974.

"2. Left the State without the prior permission of his parole officer on January 4, 1975, and that he drove to California when his permission was to fly to Clovis, New Mexico, on February 22, 1975.

"IV. That defendant was charged with other violations of the rules of parole, but proof of such technical violations are not sufficient to justify revocation of defendant's suspended sentence."

The conclusions of law were:

"I. That defendant's conduct violated the terms of his suspended sentence and his parole should be revoked."

As a basis for his petition Meidinger contends that the order revoking his suspended sentence should itself be revoked because:

(1) He was not afforded his constitutional rights to a preliminary hearing to establish probable cause for the filing of the petition for imposition of final judgment and sentence.

(2) That section 94-9831, R.C.M. 1947, (95-3213), is unconstitutional as there are no established guidelines for establishing a violation and, due to its vagueness, he could not adequately defend himself. Additionally, the same statutory sections do not require nor afford him a preliminary hearing to establish probable cause.

(3) The order signed by the judge did not set forth the reasons and findings of fact upon which the final revocation order was issued as required by the United States Constitution as set forth in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L ed 2d 484 and Gagnon v. Scarpelli, 411 U.S. 778, 93 S. Ct. 1756, 36 L ed 2d 656.

(4) The court cannot constitutionally impose final judgment and sentence simply because he failed to have steady employment.

Petitioner asserts his contentions are based on the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution; Sections 17, 24, and 27, Art.II, 1972 Montana Constitution; Sections 94-9831, 95-3212, 95-2227 and 95-1503, R.C.M. 1947; and Morrissey and Gagnon.

Petitioner cites two United States Supreme Court decisions which set forth the law to be followed by the various states, as well as by the federal judicial system. The first is Morrissey. In this decision, in an opinion written by Chief Justice Berger, it was held that the minimum requirements of due process in revoking paroles include: (a) written notice of the claimed parole violations; (b) disclosure of the evidence against him to the parolee; (c) opportunity to be heard in person and to present

witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole.

The second case relied on is Gagnon where it was held that the petitioner was entitled to both a preliminary hearing to determine whether there was probable cause to believe that he had violated his probation and a final hearing prior to the ultimate decision whether his probation should be revoked and that the state was not under a constitutional duty to provide counsel for indigents in all probation revocation cases.

We have no quarrel with the minimum due process requirements established in the two cited cases but a significant distinction exists between those cases and this case. Both Morrissey, dealing with parole revocation, and Gagnon, dealing with probation revocation, involved decisions of administrative boards such as Montana's Board of Pardons. The instant case however, involves a probation which was revoked by the original sentencing judge as authorized by section 95-2206, R.C.M. 1947. That distinction in itself provides an inherent sort of fairness which is not achieved through a solely administrative process. One of the requirements set out by Morrissey " a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers", demonstrates that the method used in the present case furnishes much more than what the United States Supreme Court considers "minimum standards of due process".

Petitioner contends that he should have had notice of the time and place of a preliminary hearing and which conditions of probation he was alleged to have violated and that he was denied due process because of the failure of the state to do so.

However, we do not believe that the decisions in Morrissey and Gagnon were intended to be inflexible rules to be applied to every revocation action without regard to the facts at hand. As the Court stated following its list of minimum due process, "We have no thought to create an inflexible structure for parole revocation procedures."

In Wolff v. McDonnell, 418 U.S. 539, 559-561, 94 S.Ct. 2963, 41 L ed 2d 935, 953, 954, the Supreme Court of the United States commented:

> "Following the decision in Morrissey, in Gagnon v. Scarpelli, 411 U.S. 778, 36 L Ed 2d 656, 93 S.Ct. 1756 (1973), the Court held the requirements of due process established for parole revocation were applicable to probation revocation proceedings.
>
> "* * *
> "We agree with neither petitioners nor the Court of Appeals: the Nebraska procedures are in some respects constitutionally deficient but the Morrissey-Scarpelli procedures need not in all respects be followed in disciplinary cases in state prisons.
>
> "We have often repeated that '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' Cafeteria Workers v. McElroy, 367 U.S. at 895, 6 L Ed 2d 1230. '[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' Ibid.; Morrissey, 408 U.S., at 481, 33 L Ed 2d 484, 92 S.Ct. 2593. Viewed in this light it is immediately apparent that one cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison.
>
> "* * *
>
> "In striking the balance that the Due Process Clause demands, however, we think the major consideration militating against adopting the full range of procedures

suggested by Morrissey for alleged parole violators is the very different stake the State has in the structure and content of the prison disciplinary hearing. That the revocation of parole be justified and based on an accurate assessment of the facts is a critical matter to the State as well as the parolee; but the procedures by which it is determined whether the conditions of parole have been breached do not themselves threaten other important state interests, parole officers, the police, or witnesses--at least no more so than in the case of the ordinary criminal trial."

Under the Montana Constitution there is no provision requiring a preliminary hearing before proceedings for revocation of parole or suspended sentence are instituted. As this Court stated in re Petition of Doney, _____Mont._____, 522 P.2d 92, 31 St.Rep. 442, dealing with counsel at a revocation hearing, all that is required is fundamental fairness and the record establishes that here.

Here, petitioner Meidinger was not under arrest at any time for probation violation and in fact was not arrested until a bench warrant was issued pursuant to the final order of revocation made by Judge Coate on June 20, 1975. The individuals involved in both the Morrissey and Gagnon decisions had been placed under arrest and detained by their respective probation officers prior to any official action taken toward revocation. In that perspective it is apparent that the requirement of a preliminary hearing was necessary to insure that some neutral body could hear the evidence and protect the rights of the accused if the charges were patently false or unjust. Where no detention is involved, no such purpose can be served.

Petitioner next alleges that section 94-9831 (95-3213), R.C.M. 1947, is unconstitutionally vague for not establishing guidelines for "establishing a violation".

The revocation hearing is not a criminal trial but a summary hearing to establish a violation of the conditions of the prisoner's probation. The probationer already stands convicted

- 8 -

of a crime no matter what the grounds for revocation may be, whether it is the commission of another crime or unauthorized travel.

Section 95-2206, R.C.M. 1947, provides:

"* * *

"Any judge who has suspended the execution of a sentence or deferred the imposition of a sentence of imprisonment under this section, or his successor, is authorized thereafter, in his discretion, during the period of such suspended sentence or deferred imposition of sentence to revoke such suspension or impose sentence and order such person committed, or may, in his discretion, order the prisoner placed under the jurisdiction of the state board of pardons as provided by law, or retain such jurisdiction with this court. Prior to the revocation of an order suspending or deferring the imposition of sentence, the person affected shall be given a hearing." (Emphasis supplied).

We will not overturn a discretionary decision without a showing of an abuse of that discretion. No such showing has been made here.

As to the failure of the order suspending sentence to enumerate the rights which petitioner would be deprived of as required by section 95-2227, R.C.M. 1947, this statute became effective January 1, 1974, as a part of the new Montana Criminal Code. The Code provided that all its provisions applied to all offenses alleged to have been committed on or after that date. The order complained of here was made on July 9, 1973.

As to the complaint that the final order did not contain the reasons and findings of fact, Judge Coate's final order included an attached document entitled "Findings of Fact". In that document the judge stated two reasons for revoking Meidinger's probationary status: (1) forfeiture of a $100 bond in Bridger, Montana, for disturbing the peace; and (2) unauthorized travel outside the state of Montana. Both findings were supported by substantial evidence produced at the hearing in which petitioner was represented by counsel.

It is not evident why the judge used the term "forfeited bond" in light of the transcript of the justice court proceedings which makes it clear that Meidinger pled guilty to that charge. In any event, it is clear the judge was satisfied as to petitioner's guilt in that action.

Since the conditions of Meidinger's probation included the standard rule that he "obey the laws of the United States and of the state of Montana", and one of Judge Coate's reasons for revocation was Meidinger's proven guilt of a new crime, disturbing the peace, there is no doubt whatsoever as to what violation was charged and relied upon for revocation.

Referring to the lack of steady employment, nowhere in the court's order is this used as a ground for revocation. There were many alleged violations contained in the parole officer's report of violations and the court held in Paragraph IV of its findings of fact that the "proof of such technical violations are not sufficient to justify revocation of defendant's suspended sentence."

It is our opinion the district court observed the requirements of Morrissey and Gagnon and that petitioner had a fair hearing, represented by counsel at every step.

The writ of habeas corpus is denied.

_____
Chief Justice

We Concur:

_____

_____

_____
Justices

_____
Hon. Jack L. Green, District
Judge, sitting for Justice
Gene B. Daly.

- 10 -