No. 14289

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

THE STATE OF MONTANA,

     Plaintiff and Respondent,

   -vs-

DAVID OPPELT,

     Defendant and Appellant.

_____

Appeal from:  District Court of the Eighth Judicial District,
           Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

    For Appellant:

        James A. Lewis, Public Defender, argued, Great Falls,
         Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Richard Larson, Assistant Attorney General, argued,
         Helena, Montana
        J. Fred Bourdeau, County Attorney, Great Falls, Montana

_____

                 Submitted: September 10, 1979
                   Decided: OCT 17 1979

Filed: OCT 17 1979

_Thomas J. Kearney_
                           Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant, David Oppelt, appeals from revocation of a suspended sentence by the Cascade County District Court.

In 1975, Oppelt was convicted of burglary upon entry of a guilty plea. He was given a 10 year sentence which was suspended on condition he abide by customary probation rules.

In May 1977, a jury found Oppelt guilty of aggravated assault, aggravated burglary and attempted theft. He was sentenced to 10 years in prison but released on bail pending appeal. The conviction was affirmed by this Court on June 8, 1978. State v. Oppelt (1978), ____Mont.____, 580 P.2d 110, 35 St.Rep. 727.

On October 7, 1977, a petition for revocation of the April 1975 suspended sentence was filed. It incorporated a district parole officer's report of violations which alleged that Oppelt assaulted Donna and Harold McClure; that he messed up and partially burned Donna McClure's house; that he intimidated April McClure; and that he had been seen drinking heavily. The "summary" contained on page two of the report listed the May, 1977 convictions as additional violations. Defense counsel and the county attorney each had complete copies of the report. However, page two of the report was missing from the petition filed in the District Court. As a result, the contents of that page, specifically, the convictions for aggravated burglary, aggravated assault and attempted theft were unknown to the District Judge. Likewise, defendant was not personally aware of their inclusion in the petition. Oppelt was brought before the court on October 14 and defense counsel obtained a continuance.

Defendant obtained a second continuance and on November 22, 1977, a hearing was held. In addition to a fire inspector's testimony, affidavits regarding the assault and the burning were submitted subject to a later determination of admissibility

The state offered the May 1977 convictions and defendant objected on the basis they were on appeal. The court neither admitted nor refused the evidence. Counsel were asked to, and did file briefs on the admissibility of the affidavits and the convictions. No decision was rendered on the first petition.

On February 1, 1978, another petition for revocation of the suspended sentence was filed. It incorporated a second report of violations which clearly listed the May 1977 convictions as infractions. On the same day, defendant was brought before the court without his attorney, who apparently received no notice of the hearing. The court ascertained that Oppelt did not know the first petition was in part based on the May, 1977 convictions. Defendant was informed the second petition was based on these convictions and that the first petition was dismissed. He was further advised that since his attorney was not present, the hearing was continued.

A hearing on the second petition was held on February 10, 1978. Defendant moved to quash the petition on grounds he was denied counsel when he was brought before the court on February 1 and further that he was being subjected to double jeopardy. The motion was denied. The only evidence introduced by the state were certified copies of the May 1977 convictions. They were admitted over defendant's objection.

The suspended sentence was revoked by court order on February 14, 1977, and defendant appeals. The following issues are before the Court.

1. Was defendant subjected to double jeopardy?

2. Was defendant denied his right to counsel?

3. Was defendant denied due process of law?

4. Was defendant afforded a hearing without unnecessary delay?

At the outset, we note that a suspended sentence may be revoked on the basis of a felony conviction, even though the

- 3 -

conviction is awaiting appellate review. Roberson v. State

of Connecticut (2nd Cir. 1974), 501 F.2d 305, 308; United

States v. Carrion (9th Cir. 1972), 457 F.2d 808; See generally,

Anno. 76 ALR3d 588; State v. Radi (1978), ____Mont.____, 578

P.2d 1169, 1181, 35 St.Rep. 489, 503, holds that persistent

offender status is not avoided where previous conviction is

pending on appeal at the time of sentencing.

Defendant contends that revocation of the suspended

sentence enhances his punishment and thus subjects him to

double jeopardy. We disagree. Even though a defendant must

live with the conditions of probation throughout the period

of suspension and even though he must serve the entire sentence

if the suspension is revoked, there is no double jeopardy.

The legislature has provided:

> "(1)  Whenever a person has been found guilty of
> an offense upon a verdict or a plea of guilty,
> the court may:
>
> " . . .
>
> "(b) suspend execution of sentence up to the maximum
> sentence allowed for the particular offense.  The
> sentencing judge may impose on the defendant any rea-
> sonable restrictions during the period of suspended
> sentence.  Such reasonable restrictions may include:
> . . . (iii) conditions for probation;
>
> " . . .
>
> "(2)  If any restrictions or conditions imposed
> under subsection (1)(a) or (1)(b) are violated, any
> elapsed time, except jail time, shall not be a credit
> against the sentence unless the court orders other-
> wise."  Section 46-18-201, MCA.

Montana case law is clearly to the same effect.

> "The revocation of a suspension of sentence leaves
> the defendant subject to execution of the orig-
> inal sentence, as though it had never been suspended."
> Matter of Ratzlaff (1977), ____Mont.____, 564 P.2d
> 1312, 1315, 34 St. Rep. 470, 473, citing Roberts v.
> United States (1943), 320 U.S. 264, 64 S.Ct. 113,
> 88 L.Ed. 41; see also State ex rel. Bottomly v.
> District Court (1925), 73 Mont. 541, 546, 237 P.2d 525, 526.

Speaking directly to the question, we have said:

> "The Fifth Amendment to the United States Consti-
> tution provides that no person shall 'be subject
> for the same offense to be twice put in jeopardy

- 4 -

of life or limb.' This prohibition is applicable to state action under the 'due process' clause of the Fourteenth Amendment to the United States Constitution. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. It protects offenders from multiple punishment for the same offense. Ex parte Lange, [85 U.S. (18 Wall) 163, 21 L.Ed 872]; United States v. Benz 282 U.S. 304, 51 S.Ct. 114, 75 L.Ed. 354. Montana's constitutional provision is substantially similar providing that 'No person shall be again put in jeopardy for the same offense . . .' Art. II, Section 25, 1972 Montana Constitution.

"However, revocation of a suspension of a sentence does not constitute a second punishment for the same offense. A defendant under a suspended sentence lives with the knowledge that 'a fixed sentence for a definite term hangs over him.' Roberts v. United States, supra; State ex rel. Bottomly v. District Court, supra. The defendant's subsequent conduct, not his original offense, forms the basis of revocation and reinstates the original sentence. Petitioner is not being punished twice for the same offense." State v. Ratzlaff, 564 P.2d at 1316, 34 St.Rep. at 474. See also Paul v. State (Alaska 1977), 560 P.2d 754; 22 C.J.S. Criminal Law §239, p. 623.

Defendant's reliance on Flint v. Hocker (9th Cir. 1972), 462 F.2d 590, is misplaced. There, the court held that a probationer has the right to counsel when revocation of probation could result in the execution of the original sentence. The decision did not condemn the execution of the original sentence upon revocation.

Defendant next asserts, and we will assume, that both proceedings to revoke the suspended sentence were based on the May, 1977, convictions. His argument that this subjects him to double jeopardy fails because it ignores the basic nature of proceedings to revoke a suspended sentence.

After conviction, the decision to suspend a sentence is a "decision to forego complete denial of liberty by incarceration in favor of a judicially-supervised period of restricted liberty in the hope that the purposes of rehabilitation of defendant and the protection of the public can be achieved by the lesser deprivation of liberty." State v. Eckley (1978), 34 Or.App. 563, 579 P.2d 291, 293. In essence, the trial court retains jurisdiction over the

- 5 -

defendant by imposing conditions on defendant's freedom to which he agrees to abide. Marutzky v. State (Okla.Cr. 1973), 514 P.2d 430, 431.

The revocation hearing is not a criminal trial. Petition of Meidinger (1975), 168 Mont. 7, 15, 539 P.2d 1185, 1190.

> " . . . It is an exercise of the court's supervision over a probationer . . .
>
> "There is no adjudication of guilt or innocence upon the court's entry of its order upon an application to revoke. The court has only made a factual determination involving the existence of a violation of the terms of the suspended sentence." Marutzky, 514 P.2d at 431. See also Petition of Meidinger, 168 Mont. at 15, 539 P.2d at 1190; State v. Ratzlaff, supra, 34 St.Rep. at 474, 564 P.2d 1316.
>
> "Because a revocation proceeding is not a criminal adjudication, does not require proof of a criminal offense, does not impose punishment for any new offense, and is an act in the performance of the duty of judicial supervision of probationary liberty . . . the Double Jeopardy Clause is [not] applicable." State v. Eckley, 579 P.2d at 293.

In this case, the first petition was dismissed without any determination on the merits. Under these circumstances and in recognition of the essence of revocation proceedings, the prohibitions against double jeopardy do not preclude the state from filing a second petition alleging the same facts. See State v. Rios (1977), 114 Ariz. 505, 562 P.2d 385. We recognize there may be a limit on how many times the same operative facts may be used as a basis for a petition to revoke. However, we do not reach the issue of the effect of a dismissal on the merits on a second petition based on the same facts. Cf. Davenport v. State (Tex. 1978), 574 S.W.2d 73; State v. Simmerman (1978), 118 Ariz. 298, 576 P.2d 157; State v. Eckley, supra; Marutzky v. State, supra.

The record belies defendant's contention that he was denied counsel. On February 1, 1978, Oppelt briefly appeared in court without his attorney. The court dismissed the first petition for revocation and informed defendant that a second petition, based on the May 1977 convictions, had been filed. The court noted that counsel

was not present and continued the hearing.

Defendant argues if counsel were present, he would have objected to the second petition on double jeopardy grounds. As demonstrated above there was no double jeopardy and defendant was not prejudiced by the absence of an objection on that ground. There was no denial of fundamental fairness or due process. We find no error. Petition of Doney (1974), 164 Mont. 330, 522 P.2d 92.

Defendant next argues he was denied due process of law by the absence of witness confrontation and the lack of a two-step hearing process. We disagree.

Defendant's guilt or innocence of the original crime is not at issue in revocation proceedings and he is not afforded the full range of constitutional rights available at trial. Gagnon v. Scarpelli (1973), 411 U.S. 778, 93 S.Ct. 1756, 36 L Ed 2d 656; Davenport v. State, supra, 574 S.W.2d at 75. This is not to say defendant has no rights in such proceedings; in Gagnon the United States Supreme Court likened revocation of probation to revocation of parole and held a probationer was entitled to a preliminary and a final hearing. See Morrissey v. Brewer (1972), 408 U.S. 471, 92 S.Ct. 2593, 33 L Ed 2d 484, requiring preliminary and final hearings in parole revocation.

> "At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decision-maker, and a written report of the hearing. 408 U.S. at 487. The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the 'minimum requirements of due process' include very similar elements:
>
> "'(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence

- 7 -

> relied on and reasons for revoking [probation or]
> parole.' Morrissey v. Brewer, supra at 489."
> Gagnon v. Scarpelli, 411 U.S. at 786, 93 S.Ct. at
> 1761-1762, 36 L Ed 2d at 664.

The February 1 hearing was not intended to be, but became a pre-liminary hearing in that there was a "minimal inquiry" into the basis of the petition. On that date defendant was given notice of the basis of the petition and was before an impartial magistrate. As there was no issue of fact, the giving of evidence was not necessary and there was no need to confront witnesses. Likewise, fundamental fairness did not require a written report of this hearing. At the February 10 hearing, which was in effect the final hearing, defendant was afforded notice, had an opportunity to be heard, was before a neutral hearing body and was given written notice of the revocation and the reason therefor. The only witness against him, the prosecutor, was subjected to cross-examination. As the only basis for revocation was the entry of the May 1977 conviction, it was not necessary for him to present witnesses. Defendant's argument that he was denied his right to confront witnesses at the hearing on the first petition (November 22, 1977) is not germane to the order issued on the second petition.

Defendant's argument that he was denied his constitutional right to a speedy trial lacks merit. A speedy trial under the Sixth Amendment to the United States Constitution and section 24, Article II of the Montana Constitution is guaranteed only in "criminal prosecutions." As discussed, revocation of probation is not a criminal prosecution or proceeding. See Paul v. State, supra.

In the alternative defendant notes he has a right to a hearing "as promptly after arrest as possible" under section 46-23-1013, MCA. See also Morrissey v. Brewer, 408 U.S. at 485, 92 S.Ct. at 2602, 33 L Ed 2d at 496. This is a determination to be made on the basis of the facts of the particular case. Here, defendant was initially brought before the court on October 14, 1977. Although the record

is not clear as to the exact date of arrest, we know it occurred between October 7, the date the arrest warrant was issued, and October 14, the date of the initial hearing. There is no claim that an unreasonable time elapsed between arrest and this first hearing. Thereafter, defendant caused substantial delays and did not at any time assert his right to a hearing without unnecessary delay. We are also mindful of the dismissal of the first petition and the necessity of filing the second petition. Under the facts of this case there was no unnecessary delay. Defendant's argument the delay prejudiced him by causing him to lose the premium on his appeal bond is without merit. The bond was lost as a result of his arrest, not as a result of any delay, necessary or otherwise.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices