No. 89-210

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

STATE OF MONTANA,

            Plaintiff and Respondent,

      -vs-

DONALD DALE KINGERY,

            Defendant and Appellant.

_____

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Donald Kingery, pro se, Missoula, Montana

      For Respondent:

            Hon. Marc Racicot, Attorney General, Helena, Montana
            Dorothy McCarter, Asst. Atty. General, Helena
            Robert Deschamps, III, County Attorney; Betty Wing,
            Deputy, Missoula, Montana

_____

                        Submitted on Briefs:   Aug. 10, 1989

                              Decided:   September 14, 1989

Filed:

_____
                        Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Fourth Judicial District, Missoula County, State of Montana. The District Court revoked defendant's prior suspended sentence and sentenced defendant to ten years in the Montana State Prison at Deer Lodge. Defendant appeals and alleges that he was deprived of his constitutional right to due process. We affirm.

The issues in this case are:

1. Did the State violate defendant's constitutional rights of due process during arraignment and extradition proceedings?

2. Did the State violate defendant's constitutional right of due process during probation revocation proceedings?

On October 19, 1987, the defendant, Donald Dale Kingery, entered into a plea bargain agreement. In return for pleading guilty to forgery, the defendant received probation and a ten year suspended sentence subject to certain conditions. Under the conditions the defendant was to check in weekly with a probation officer, make restitution and not be in bars or consume alcohol and not change residence without first obtaining permission. Judgment on the forgery charge was entered against the defendant on January 18, 1988.

The State filed a petition to revoke the suspended sentence on July 12, 1988, citing several violations by the defendant of the terms and conditions of the judgment. That same day a bench warrant issued for the arrest of defendant. The defendant was eventually located and arrested in Clackamas County, Oregon. On October 17, 1988, Oregon sent notice to Missoula District Court that the defendant had been arraigned and refused to waive extradition. The Missoula

2

County Attorney then applied to the Governor to request the defendant's extradition from Oregon and the Montana Governor's office issued the request on October 27, 1988.

The defendant was returned to Montana on November 18, 1988, and had his initial appearance in Missoula County District Court on November 22, 1988, at which time counsel was appointed. On December 5, 1988, the defendant denied all allegations in the petition to revoke and a hearing was set. Hearing on the petition was held January 23, 1989, and ultimately the District Court did revoke defendant's suspended sentence.

Defendant appeals from the judgment revoking the suspended sentence. Mr. Kingery, although having benefit of the counsel of a public defender at all prior stages, has now chosen to proceed pro se.

I.

Did the State violate Kingery's constitutional rights of due process during arraignment and extradition proceedings?

Defendant asserts that he was deprived of his constitutional rights of due process as a result of the State's failure to follow procedural guidelines set forth in Montana law and the Federal Rules of Criminal Procedure regarding his arraignment and subsequent extradition. However, the arraignment and extradition proceedings took place in Oregon and therefore are susceptible to Oregon law, not Montana law. The general rule regarding challenge of extradition proceedings is that:

> In interstate extradition proceedings, the prisoner is held under the extradition process only until such time as he reaches the jurisdiction of the demanding state, and is thenceforth held under the process issued out of the courts of that state. Consequently, the regularity of extradition proceedings may

3

> be attacked only in the asylum state;
> after an alleged fugitive has been
> delivered into the jurisdiction of the
> demanding state, the proceedings may not
> be challenged. (Citations omitted.)

State v. Flint (W.Va. 1983), 301 S.E.2d 765, 772, quoting 31 Am.Jur.2d Extradition § 74 (1967).

Under the Uniform Criminal Extradition Act, codified in Montana at § 46-30-101, MCA, et seq., the remedy for a fugitive arrested in another state who opposes extradition is to apply for a writ of habeas corpus in the asylum state. Section 46-30-217(2), MCA. Not having opposed the extradition proceedings in Oregon, defendant may not now attempt to do so in Montana. See Michigan v. Doran (1978), 439 U.S. 282, 290, 99 S.Ct. 530, 536, 58 L.Ed.2d 521, 528. Additionally, a subsequent conviction is not invalidated by irregularities or improprieties in the extradition proceedings. Brown v. Nutsch (8th Cir. 1980), 619 F.2d 758, 762.

We hold that the defendant's challenge to extradition proceedings is not properly before this Court and in no way affects the validity of the District Court's order revoking defendant's probation.

## II.

Did the State violate defendant's constitutional rights of due process during revocation proceedings?

The basis of defendant's argument seems to be (1) that he did not have sufficient notice of the charges against him and the purpose of the preliminary hearing, and (2) that erroneous information was employed by the prosecutor and probation officer during the revocation hearing. We will first address defendant's claim he had insufficient notice of the charges and of the purpose of the preliminary hearing.

4

This Court previously held that the purpose of the preliminary hearing on a petition to revoke probation is "to determine whether there is probable cause to believe that the accused committed a probation violation." State v. Swan (1986), 220 Mont. 162, 166, 713 P.2d 1003, 1006. Additionally, concern for promptness mandates the preliminary hearing. Id.

Montana's statutory provision for dealing with probation violations is found in §§ 46-23-1012 and -1013, MCA. Section 46-23-1012(1), MCA, provides:

> At any time during probation or suspension of sentence a court may issue a warrant for the arrest of the defendant for violation of any of the conditions of release or a notice to appear to answer a charge of violation. Such notice shall be personally served upon the defendant. (Emphasis added.)

Only notice to appear, if the State chooses that route, requires personal service. The State in this case, however, chose to issue a warrant for the defendant's arrest rather than notice to appear. Personal service, therefore, is not necessary.

Section 46-23-1012(2), MCA, further requires notice of probation violations be given when a warrantless arrest of one who breaks probation is made. This was not a warrantless arrest. Oregon authorities arrested defendant pursuant to a bench warrant issued by the State of Montana. Contrary to defendant's belief, notice of probation violations did not have to be given defendant at this juncture because this arrest was pursuant to a warrant.

Section 46-23-1013, MCA, provides post-arrest procedures. Section 46-23-1013(1), MCA, requires the arrested probationer be brought before the court with jurisdiction over the prisoner "without unnecessary delay for

5

a hearing on the violation charged." Defendant was arrested on October 13, 1988 and timely arraigned on or before October 17, 1988 in Oregon where he refused to waive extradition. Extradition proceedings were begun immediately. Four days after his arrival in Montana, defendant made his initial appearance. At this initial appearance, defendant received a copy of the petition to revoke his suspended sentence which contained charges of specific probation violations. Any delay defendant suffered as to notice of the specific allegations against him and of the purpose for the preliminary hearing was due to his refusal to waive extradition.

As noted in State v. Oppelt (1979), 184 Mont. 48, 56, 601 P.2d 394, 399, any determination of unnecessary delay depends on the facts of the particular case. In Oppelt, as here, the defendant caused the delay and did not assert his right to hearing without delay. We hold defendant's claim that he suffered a delay of notice as to the allegations against him, thus depriving him of his right to due process, to be without merit. It should be noted that:

> The revocation hearing is not a criminal trial but a summary hearing to establish a violation of the conditions of the prisoner's probation. The probationer already stands convicted of a crime no matter what the grounds for the revocation may be, whether it is the commission of another crime or unauthorized travel.

Petition of Meidinger (1975), 168 Mont. 7, 15, 539 P.2d 1185, 1190. This is not to say that petitioner has no rights at a revocation proceeding, but the hearing is less formal.

In a probation revocation hearing the due process requirements are: a) written notice of the violations; b) disclosure of evidence against the probationer; c)

6

opportunity to be heard in person and to present witnesses and evidence; d) a neutral tribunal; e) a written statement by the factfinder as to the evidence relied on and the reasons for revoking; f) the right to cross-examine witnesses unless the hearing body finds good cause for disallowing confrontation; and g) the right to counsel in some circumstances. State v. Lange (Mont. 1987), 733 P.2d 846, 848, 44 St.Rep. 418, 420, (citing Black v. Romano (1985), 471 U.S. 606, 611-12) and Swan, 220 Mont. at 165, 713 P.2d at 1005-1006.

From the record it is clear that all of these requirements have been met in the instant case. Defendant's constitutional rights have been upheld.

Defendant next argues that the State, through its prosecutor and probation officer, used "erroneous information" to obtain revocation of his suspended sentence. Specifically, defendant alleges that 1) the prosecutor erroneously led the district judge presiding at the January 23, 1989 hearing on a motion to dismiss, to believe defendant had been arraigned on the bench warrant;" 2) the prosecutor led the probation officer and the probation officer supplied false information regarding a report made by a Troy, Montana police officer, and the State did not subpoena the Troy police officer or the Libby probation officer whose reports were referred to in the hearing in revocation of probation, i.e., the State improperly relied on hearsay to make its case.

Defendant's argument that the judge was erroneously led to believe defendant had been arraigned in Oregon does not stand up to scrutiny. The bench warrant for defendant's arrest was issued on July 12, 1989. Defendant was arrested on October 13, 1988 in Oregon. An Oregon court document, dated October 17, 1988, clearly states that defendant "has

7

been arraigned on the fugitive complaint" and "has refused to waive extradition."

Defendant appears to be arguing that he was arraigned on a fugitive complaint only rather than on a bench warrant and fugitive complaint, and therefore, procedural due process was lacking. Whether defendant was arraigned in Oregon on the fugitive complaint only makes no difference. The fugitive complaint contains information adequate to apprise the fugitive of the reasons he is being detained. Additionally, defendant appeared in Missoula District Court shortly after he arrived in Montana following his extradition from Oregon. At this initial appearance, defendant received a copy of the petition to revoke his suspended sentence which contained allegations of the specific violations of probation conditions committed by him. On December 5, 1988, defendant again appeared in District Court and denied all allegations in the petition. Finally, a full hearing on the revocation petition was held in January, 1989 and testimony was presented. Defendant did not testify or offer evidence to rebut claims of probation violations alleged in the petition.

Defendant's claims that the State through the testimony of Probation Officer Michael McCarty submitted erroneous testimony to the court and relied on reports from individuals who could easily have been subpoenaed, are also without merit.

Defendant asserts that Probation Officer McCarty perjured himself in his Report of Violation submitted to the District Court in which Mr. McCarty wrote the defendant "was observed drinking a beer by Bill Denton of the Troy Police Department." At the revocation hearing Mr. McCarty also indicated that Officer Denton had observed defendant consuming alcohol in Troy. Police Officer Denton's Investigation Crime Report, which was admitted into evidence

8

at the revocation hearing, actually stated that the defendant "was found at the bar with a glass of beer in front of him." Defendant further argues that both Officer Denton and Libby Probation Officer Edward Duelfer, whose reports chronicling defendant's probation violations in Lincoln County were admitted into evidence, could have been subpoenaed and use of their reports constitutes hearsay.

At a probation revocation hearing the standard required is "fundamental fairness." Meidinger, 168 Mont. at 15, 539 P.2d at 1190. The events of defendant's multiple hearings indicate he received fundamental fairness. Mr. McCarty's paraphrasing of the Investigation of Crime Report does not constitute perjury. Defendant's counsel cross-examined Mr. McCarty at the hearing and had opportunity to rebut any testimony presented by Mr. McCarty. Furthermore, drinking intoxicants was only one of the several violations of probation conditions for which defendant's probation and suspended sentence are being revoked. The hearing to revoke defendant's probation therefore met the fundamental fairness requirement.

As to the charge that reports from the Troy police officer and Libby probation officer were improperly admitted over objection by counsel that testimony as to their content would constitute hearsay, it must be remembered the revocation hearing is not a criminal trial. The defendant has already been convicted of a crime and the hearing is only to establish violations of the prisoner's probation. Id. For those reasons, less process is due the prisoner, and "that process must be flexible enough to allow the court to consider documentary evidence that may not meet usual evidentiary requirements." U.S. v. Simms (9th Cir. 1987), 812 F.2d 561, 564. The admission into evidence of the officers' reports was not error in the probation revocation

9

hearing. We hold that defendant's constitutional right to due process was not violated during the proceedings to revoke probation and suspended sentence.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices