DA 07-0492

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 360

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

ROBERT TRIPLETT,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Dawson, Cause No. DC-05-029
Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Robin Amber Meguire, Attorney at Law; Great Falls, Montana

      For Appellee:

      Hon. Mike McGrath, Montana Attorney General; Tammy K Plubell,
Assistant Attorney General; Helena, Montana

      Scott Herring, Dawson County Attorney, Glendive, Montana

Submitted on Briefs:  July 30, 2008

Decided:  October 28, 2008

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Robert Triplett (Triplett) appeals an order of the Seventh Judicial District Court, Dawson County, revoking Triplett's suspended sentence imposed by the Sentence Review Division for the offense of sexual intercourse without consent, and sentencing Triplett to forty years in Montana State Prison (MSP) with twenty years suspended.

¶2 We address the following issues on appeal:

¶3 1. Did delays between the answer hearing and the evidentiary hearing deny Triplett due process of law in his probation revocation proceeding?

¶4 2. Did the District Court unlawfully expand Triplett's sentence upon revocation of his suspended sentence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 On June 22, 2005, the State filed an Information charging Triplett with three counts of sexual intercourse without consent, felonies. The charges were based on Triplett, who was twenty-seven, having sexual intercourse with a fifteen year old girl. Triplett entered into a plea agreement with the State and pled guilty to one count of sexual intercourse without consent in exchange for the State dismissing the other two counts. On February 27, 2006, the District Court sentenced Triplett to MSP for twelve years with four years suspended. Triplett was made ineligible for parole until he completed Phase I and II of the Sex Offender Treatment Program. The court also imposed other conditions upon his suspended sentence.

2

¶6     Triplett then petitioned the Sentence Review Division for review of the District Court's sentence.  After a hearing on May 5, 2006, the Sentence Review Division amended Triplett's sentence, imposing a forty-year sentence, all of which was suspended upon specific conditions.  On June 8, 2006, the District Court issued an Amended Judgment and Commitment reflecting the Sentence Review Division's action.  Triplett was released.

¶7     On September 28, 2006, the State filed a Petition for Revocation of Suspended Sentence.  The petition alleged Triplett had violated the conditions of his suspension, including:  listing an incorrect address on his Sexual and Violent Offender Registration; having contact with the victim on several occasions; failing to successfully complete outpatient sexual offender treatment; failing to keep his probation officer apprised of his current address; having contact with a fourteen-year-old female without adult supervision; and failing to make payments on his court-assessed fines and fees and other financial obligations.

¶8     The District Court issued a bench warrant and Triplett was arrested on October 2, 2006.  On October 17, 2006, Triplett made an initial appearance and the court informed Triplett of the allegations in the petition and of his rights.  On October 24, 2006, the court conducted an answer hearing, wherein Triplett denied each allegation of the petition. Triplett's counsel requested at least three to four weeks in which to prepare for an evidentiary hearing.  Based on the parties' schedules and the court's calendar, the court then set an evidentiary hearing for December 22, 2006.  On December 8, 2006, citing difficulties with interviewing witnesses, defense counsel moved to continue the hearing

until January 2007, and the court rescheduled the hearing for January 9, 2007. On January 8, 2007, the parties filed a joint motion to continue the evidentiary hearing, based on unavailability of witnesses. The District Court granted the motion and continued the hearing "[t]o a date agreed by counsel."

¶9 On March 6, 2007, Triplett filed a *pro se* motion titled Request for Electronic Monitoring. However, his motion also indicated that Triplett had hired private counsel, who was "investigating the case and . . . trying to get up to speed." On March 26, 2007, the court scheduled a hearing for April 6, 2007, for purposes of the evidentiary hearing on the petition and to address Triplett's motion for electronic monitoring. On April 6, the parties appeared for the hearing and the State moved to continue the hearing because the State had learned the previous day that the probation and parole officer had taken medical leave. The court thus continued the hearing until April 20, 2007. On April 19, 2007, Triplett filed a *pro se* motion requesting appointment of new counsel. The following day, both parties appeared before the court and Triplett stated he and his attorney had resolved their differences and he was ready to proceed.

¶10 The parties advised the court they had reached an agreement for adjudication and recommended disposition. Pursuant to the agreement, Triplett answered "true" to some of the alleged violations of his sentence conditions in exchange for the State's agreement to request dismissal of other allegations and to recommend the court impose "the sentence it originally imposed, which was twelve years with the four suspended."

¶11 Based on his admissions, the court found Triplett did "violate the terms of the suspended portion of his previously imposed sentence." The District Court indicated it

had not decided whether it would follow the terms of the plea agreement and scheduled a dispositional hearing for May 1, 2007. At the May 1, 2007 hearing, the court asked the State for its sentencing recommendation and, consistent with the plea agreement, the State recommended that Triplett be sentenced to "the original sentence," or twelve years with four suspended, with no possibility of parole until after completion of Phase I and II of the Sexual Offender Treatment Program. Counsel for Triplett concurred. The court then took a recess to review the sentencing statutes. Stating that it saw nothing in the statutes giving it authority to overturn the Amended Judgment and Commitment of the Sentence Review Division, the court sentenced Triplett to forty years in MSP with twenty years suspended. Triplett received credit for 595 days prior time served in prison and in jail during the revocation proceedings.

¶12 Triplett appeals from the District Court's Order Revoking Suspended Sentence and Imposing Sentence.

## STANDARD OF REVIEW

¶13 This Court's review of questions regarding constitutional law is plenary. *State v. LaFreniere*, 2008 MT 99, ¶ 7, 342 Mont. 309, ¶ 7, 180 P.3d 1161, ¶ 7. More specifically, plenary review is applied to whether a court violated a probationer's constitutional right of due process. *State v. Finley*, 2003 MT 239, ¶ 10, 317 Mont. 268, ¶ 10, 77 P.3d 193, ¶ 10. Likewise, the interpretation and construction of a statute is a matter of law and we review whether the district court interpreted and applied a statute correctly de novo. See *State v. Weaver*, 2008 MT 86, ¶ 10, 342 Mont. 196, ¶ 10, 179 P.3d 534, ¶ 10; *State v. Clark*, 2006 MT 313, ¶ 7, 335 Mont. 39, ¶ 7, 149 P.3d 551, ¶ 7.

5

## DISCUSSION

**¶14 Did delays between the answer hearing and the evidentiary hearing deny Triplett due process of law in his probation revocation proceeding?**

¶15 Citing the "without unreasonable delay" language within § 46-18-203(4), MCA, Triplett argues the District Court "unduly delayed [his] final revocation hearing" in violation of this statute, "resulting in prejudice to his liberty interests and associated due process rights." The State counters, stating Triplett "failed to prove that the district court denied him due process" and "failed to establish that he was in any way prejudiced by the delay between the answer hearing and the evidentiary hearing." Both parties concede, and the record indicates, there were various delays between the answer hearing and the final evidentiary hearing. The disagreement arises, however, over whether there were "undue" delays that rise to the level of a due process violation and, if so, whether those delays prejudiced Triplett.

¶16 The due process rights of a probationer in a revocation proceeding are different from those afforded a defendant in a criminal proceeding. We have explained:

> The revocation hearing is not a criminal trial but a summary hearing to establish a violation of the conditions of the prisoner's probation. The probationer already stands convicted of a crime no matter what the grounds for the revocation may be, whether it is the commission of another crime or unauthorized travel.

*State v. Kingery*, 239 Mont. 160, 165, 779 P.2d 495, 498 (1989) (citing *Petition of Meidinger*, 168 Mont. 7, 15, 539 P.2d 1185, 1190 (1975)). Further, the constitutional right to a speedy trial does not apply to a revocation of probation proceeding. *State v. Oppelt*, 184 Mont. 48, 56, 601 P.2d 394, 399 (1979). However, because a probationer's

6

liberty interests are at stake in this type of proceeding, "the minimum requirements of due process are extended to sentence revocation hearings." *State v. Pedersen*, 2003 MT 315, ¶ 21, 318 Mont. 262, ¶ 21, 80 P.3d 79, ¶ 21 (2003); *State v. Nelson*, 225 Mont. 215, 218, 731 P.2d 1299, 1302 (1987).

¶17    Due process protections for a revocation hearing are codified in § 46-18-203, MCA, which provides, in pertinent part:

> (4)    Without unnecessary delay, the offender must be brought before the judge, and the offender must be advised of:
> (a)    the allegations of the petition;
> (b)    the opportunity to appear and to present evidence in the offender's own behalf;
> (c)    the opportunity to question adverse witnesses; and
> (d)    the right to be represented by counsel at the revocation hearing
> . . .
> (5)    A hearing is required before a suspended or deferred sentence can be revoked or the terms or conditions of the sentence can be modified
> . . .

Section 46-18-203(4)-(5), MCA (2005).  This Court has held that "[t]he foundation of the guarantee of due process is fairness, which calls for safeguards tailored to the demands of the particular legal context of probation revocation." *State v. Finley*, 2003 MT 239, ¶ 29, 317 Mont. 268, ¶ 29, 77 P.3d 193, ¶ 29 (citing *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 782, 93 S. Ct. 1756, 1760, 36 L.Ed.2d 656).  In other words, "a probation revocation hearing must be fundamentally fair." *State v. Pedersen*, 2003 MT 315, ¶ 20, 318 Mont. 262, ¶ 20, 80 P.3d 79, ¶ 20 (2003).

¶18    Triplett argues he was denied due process because the State failed to bring him before the judge for his final revocation hearing "without unnecessary delay," which he asserts is required by § 46-18-203(4), MCA.  The State argues, and we agree, that the

"without unnecessary delay" language plainly refers to the first court appearance after an offender is arrested pursuant to a revocation petition.

¶19 Triplett cites our holding in *State v. Swan* and offers that the language therein stating a "revocation hearing should be 'held promptly' and defendant should be 'brought before the court without unnecessary delay for a hearing on the violation charged,'" demonstrates the applicability of the statutory language to a revocation hearing. 220 Mont. 162, 166, 713 P.2d 1003, 1006 (1986). Triplett's attempt to extend the holding of *Swan* and the "without necessary delay" statutory language to a revocation hearing negates the distinction *Swan* made between an initial hearing and the revocation hearing. This is a misapplication of *Swan*, and we have further explained that the requirements of § 46-18-203, MCA, apply "*prior to* a revocation hearing . . ." *Finley*, ¶ 30 (emphasis added). It is clear the statutory language refers to a probationer's initial appearance before the court, when he is advised of the rights set forth in § 46-18-203(4)(a)-(d), MCA. In Triplett's case, this occurred well before the revocation proceeding, and his reliance on this authority is misplaced.[1]

¶20 Triplett next argues that even if the "without unnecessary delay" language of § 46-18-203(4), MCA, does not apply to the revocation hearing, minimum due process requirements require that a revocation hearing take place "within a reasonable time." As noted above, the standard this Court has articulated for determining whether a defendant was afforded minimum due process in a revocation proceeding is "fundamental fairness."

---

[1] Triplett does not claim the fifteen days between his arrest and his initial appearance or the seven days between his initial appearance and the answer hearing, in and of themselves, violate either the statute or constitutional due process.

8

¶21 After Triplett's arrest on October 2, 2006, initial appearance on October 17, 2006, and answer hearing on October 24, 2006, a series of delays and continuances occurred at the request of both parties. Counsel for Triplett requested a continuance on December 8, 2006, and jointly moved with the State for continuance of the hearing scheduled for January 9, 2007. The court again granted the continuance and indicated it would schedule a new date agreeable with the parties' counsel. Triplett's March 6, 2007 motion for electronic monitoring indicated he had hired new counsel, leading the court to schedule a hearing for April 6, 2007. Triplett then changed course two more times in regard to his counsel, ultimately reaffirming his satisfaction with appointed counsel. The parties reached an agreement for adjudication and recommended disposition on April 20, 2007.

¶22 The delays at issue in this case arose out of the parties' scheduling needs, particularly Triplett's. Triplett also made multiple requests for change of counsel. Triplett is not in a position to claim the delays were unfair when his counsel procured many of them, either by seeking a continuance or by delaying efforts to schedule a hearing date, and when Triplett's requests for new counsel added to the uncertainty of the schedule. We conclude the scheduling of the revocation hearing was fundamentally fair and Triplett's due process rights were not violated.

¶23 **Did the District Court unlawfully expand Triplett's sentence upon revocation of his suspended sentence?**

¶24 Triplett argues that, upon revocation of his suspension, the District Court unlawfully expanded his sentence by following the amended sentence imposed by the

9

Sentence Review Division. Section 46-18-203(7)(a)(iii), MCA, provides that, upon revocation, a judge may "require the offender to serve either the sentence imposed or any sentence that could have been imposed that does not include a longer imprisonment or commitment term than the original sentence." Triplett contends the term "original" expressly refers to the sentence imposed by the District Court, rather than the amended sentence imposed by the Sentence Review Division, and thus the district court's sentence set the limits of the sentence which may be imposed upon revocation under the statute. The State replies that, when the Sentence Review Division has acted pursuant to its authority, the term "original" necessarily refers to the Sentence Review Division's amended sentence, and adoption of Triplett's interpretation of the statute "would render the work of the Sentence Review Division meaningless."

¶25 This Court construes a statute by reading and interpreting the statute as a whole, "without isolating specific terms from the context in which they are used by the Legislature." *Montana Sports Shooting Ass'n, Inc. v. State, Montana Dept. of Fish, Wildlife and Parks*, 2008 MT 190, ¶ 11, 344 Mont. 1, ¶ 11, 185 P.3d 1003, ¶ 11 (internal citations omitted). "Statutory construction is a holistic endeavor and must account for the statute's text, language, structure and object." *State v. Heath*, 2004 MT 126, ¶ 24, 321 Mont. 280, ¶ 24, 90 P.3d 426, ¶ 24 (internal quotations and citations omitted). We must also "read and construe each statute as a whole so as to avoid an absurd result and to give effect to the purpose of the statute." *Infinity Ins. Co. v. Dodson*, 2000 MT 287, ¶ 46, 302 Mont. 209, ¶ 46, 14 P.3d 487, ¶ 46 (internal quotations and citation omitted).

¶26 With these standards in mind, we look to the context within which § 46-18-203, MCA, operates and, more specifically, its relation to the sentence review process. The Sentence Review Division of the Montana Supreme Court is authorized under § 46-18-901, MCA. Pursuant thereto, a person sentenced to incarceration for a term of one year or more may apply for review of his sentence. Upon receiving such an application, the Sentence Review Division:

> (a)(i) shall review the judgment as it relates to the sentence imposed and any other sentence imposed on the person at the same time; and (ii) may order a different sentence or sentences to be imposed as could have been imposed at the time of the imposition of the sentence under review, including a decrease or increase in the penalty; or (b) may decide that the sentence under review should stand.

Section 46-18-904(1), MCA. The decision of the Sentence Review Division in each case "is final." Section 46-18-905(1), MCA.

¶27 This Court has held that review before the Sentence Review Division, like the original sentencing itself, is a critical stage of a criminal proceeding. *Ranta v. State*, 1998 MT 95, ¶ 29, 288 Mont. 391, ¶ 29, 958 P.2d 670, ¶ 29. The sentence review process is unique; it has aspects similar to sentencing before a district court and to an appeal. Sentence review resembles an appellate process because it is the only opportunity a defendant has to challenge an otherwise lawful sentence on equitable grounds. *Ranta*, ¶ 27. In conducting its review, the Sentence Review Division functions as an arm of this Court and if the legislature were to abolish the review division, this function would simply return to this Court. *Ranta*, ¶ 27. Like decisions issued directly by this Court, the Sentence Review Division decisions are final, cannot be appealed and are reported in the

11

Montana Reports. *Ranta*, ¶ 27. Pursuant to statute and the Division's rules, a district court must re-sentence a defendant in accordance with the sentence imposed by the Division. Section 46-18-904(1), MCA; Rule 19, Rules of Sentence Review Division, promulgated under § 46-18-901, MCA.

¶28 However, the sentence review process is also similar to the sentencing procedures of a district court. The Sentence Review Division has authority to impose any sentence which "could have been imposed" by the district court in the first instance. This includes increasing the sentence, a power this Court does not possess on appellate review. Section 46-18-904(1)(a)(2), MCA; *Ranta*, ¶ 28. The Review Division can "require the production of presentence reports and any other records, documents, or exhibits relevant to the review proceedings." Section 46-18-904(2), MCA.

¶29 Triplett gleans from the holding in *Ranta* that this Court "has assumed that a sentence amended by the [Sentence Review Division] does not become the "original" sentence." At issue in *Ranta* was the defendant's right to counsel in a sentence review proceeding. Thus, our holding that the Sentence Review Division process is a "critical stage of the proceedings" necessitating application of a defendant's right to counsel did not infer or assume that the Sentence Review Division's amended sentence did not qualify as the "original" sentence for purposes of applying the revocation sentencing provision of § 46-18-203, MCA.

¶30 Under the interpretational standards articulated above, we must read and interpret § 46-18-203, MCA, holistically so as to avoid an absurd result and to give effect to the purpose of the statute. The only logical interpretation of § 46-18-203, MCA, in light of

12

the authority of the Sentence Review Division, is that a sentence imposed by the Division steps into the stead of the previous district court sentence and, in effect, becomes the "original" sentence for purposes of revocation. Indeed, the statute says that Division sentences are "final." Only this interpretation can give meaning and purpose to the sentence review process as a "critical stage" of the criminal proceeding. Any other interpretation would yield an absurd result. As the State notes, adopting Triplett's interpretation would allow a defendant to apply for sentence review and, upon receiving an unfavorable sentence, force a revocation proceeding to return to the sentence imposed by the sentencing court.

¶31 Upon issuance of the Sentence Review Division's decision amending Triplett's sentence, an amended judgment was entered by the District Court. The Division's decision was published in Montana Reports and Triplett was notified of the amended judgment. It became final. We conclude that, for purposes of a sentence revocation proceeding, the amended sentence imposed by the Sentence Review Division superseded the sentence Triplett received from the District Court, and the District Court, upon revocation of that sentence, could impose a sentence not exceeding the terms of that sentence.

¶32 Triplett chose to apply to the Sentence Review Division and the process initially worked to his advantage—he received a new sentence that reduced his prison time and allowed him to be released, with the power to remain out of prison. Now that his sentence has been revoked, Triplett cannot now escape that sentence by arguing it is not the "real" sentence after all.

13

**CONCLUSION**

¶33 Triplett's final revocation hearing was not unduly delayed. Scheduling of the final revocation hearing was fundamentally fair and Triplett's due process rights were not violated. Additionally, the term "original," as used in § 46-18-203(7)(a)(iii), MCA, does not refer to Triplett's initial sentence from the District Court, as that sentence has been superseded by the amended sentence imposed by the Sentence Review Division. Thus, the District Court did not unlawfully expand Triplett's sentence upon revocation of his suspension.

¶34 Affirmed.

/S/ JIM RICE

We concur:

/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER