

DA 13-0018

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 347

STATE OF MONTANA,

       Plaintiff and Appellee,

v.

VICTOR GAYLEN SEBASTIAN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 10-58
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Julie Brown, Montana Legal Justice, PLLC; Missoula, Montana

       For Appellee:

       Timothy C. Fox, Montana Attorney General, Pamela P. Collins, Assistant
Attorney General; Helena, Montana

       William E. Fulbright, Ravalli County Attorney, Thorin Geist, Deputy Ravalli
County Attorney; Hamilton, Montana

Submitted on Briefs:  October 30, 2013
Decided:  November 19, 2013

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Victor Gaylen Sebastian (Sebastian) appeals from the Order of the Montana Twenty-First Judicial District Court, Ravalli County, revoking his suspended sentence, committing him to the custody of the Department of Corrections and recommending he be screened for the most intensive chemical dependency treatment program available. We affirm.

¶2 We address the following issue:

*Did the District Court abuse its discretion by denying Sebastian's motion to continue the revocation hearing when the evidence against him had not been fully disclosed, violating his right to due process?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In 2011, Sebastian was found guilty of felony burglary and misdemeanor criminal mischief, for breaking into a church. He was committed to the supervision of the Department of Corrections for five years, all suspended, to run concurrently with a six-month suspended sentence related to another offense; and placed under the rules and regulations of the Adult Probation and Parole Bureau. The conditions of his probation included the following:

> (i) The Defendant must comply with all municipal, county, state, and federal laws and ordinances, and conduct himself/herself as a good citizen . . .
> (j) The Defendant is prohibited from using or possessing alcoholic beverages and illegal drugs . . .
> (dd) The Defendant will not knowingly associate with probationers, parolees, prison inmates . . .
> (l) The Defendant will pay all fines and fees as ordered and directed by the Court.

2

¶4    Sebastian has an unusually severe case of Crohn's disease. He has had over thirty operations due to this condition, lost three toes to it, and had eleven pounds of his intestines removed. Sebastian has been prescribed hydrocodone and methadone as well as other medications, to help him live with Crohn's disease. He admits to using marijuana medicinally for this condition, although he is no longer legally-authorized to do so. He admits to crushing and snorting his hydrocodone and methadone because, he says, Crohn's disease otherwise causes him to pass the medications before they are absorbed by his system. The instructions on the medications provide they are to be taken orally.

¶5    On August 10, 2012, Sebastian was stopped for driving erratically. The responding officer said that when he came up to the vehicle, Sebastian appeared to be sleeping and kept closing his eyes and putting his head back. Sebastian passed field sobriety tests. He initially agreed to a blood test, but changed his mind. Significantly later, he passed a drug recognition test. He was not cited for driving under the influence.

¶6    On August 15, 2012, Sebastian admitted to his probation officer that he was taking too much of his medication. He stated he was crushing up and snorting the medication and that he had a problem. Based on these disclosures, his probation officer told him she was going to file a revocation and that she felt he needed long term inpatient treatment, to which, she said, Sebastian agreed.

¶7    On August 23, 2012, Sebastian was involved in a motor vehicle accident with a jeep near Corvallis on Eastside Highway at the 6.9 mile marker. The driver of the jeep fled the scene and the responding officer pursued. Sebastian left the scene in the opposite direction.

3

State Trooper Tamra Winchell eventually caught up with Sebastian at a trailer court. When she spoke to Sebastian, it appeared to her that he was "under the influence of something." Half an hour to forty-five minutes after she arrived at the scene she said Sebastian became sick. He was sweating and complaining of pain; she had to open the door of her patrol car for him to throw up. Winchell transported Sebastian to the hospital. There, he submitted to blood tests. The preliminary blood tests were positive for marijuana and a methamphetamine component. At the time of the revocation hearing, the results of the blood tests had not come back yet and Sebastian could only be charged with careless driving.

¶8      Sebastian's probation officer also arrived at the scene on August 23. She testified that he told her his car had been parked all day at the trailer park. He did not report the accident to her and denied having any knowledge of the accident. She also stated he appeared to be under the influence of something—nodding off at times, appearing very awake at times, and periodically turning "extremely aggressive." She stated that Sebastian also told her on August 23 that he had been misusing his medications.

¶9      At the time of these events, Sebastian was dating a woman who lived with her father. Her father was on probation. She stated that Sebastian came over the house all the time but had very little interaction with her father. Neither the father's probation officer nor Sebastian's probation officer had approved the two having contact.

¶10     Finally, Sebastian stated at his hearing that, because he does not have the money, he has not been paying his court-ordered supervision fees.

¶11 In a letter to the District Court, received September 11, 2012, Sebastian admitted to crushing and snorting his medications because of his Crohn's disease. He also admitted to the fact that he did not have a medical marijuana card, although he still needs the drug.

¶12 On September 7, 2012, the State filed a petition to revoke Sebastian's suspended sentence. The State alleged that Sebastian had violated his probation by driving under the influence of hydrocodone and methadone; refusing to provide a bodily fluid sample requested by a law enforcement officer; and driving a vehicle while under the influence of narcotics, being involved in an accident, and lying about being involved in the accident. The State also alleged that Sebastian violated his probation on at least two occasions by crushing up his medications and snorting them, rather than taking them as directed by a physician. In addition, it alleged Sebastian had been associating with another probationer without permission and failing to pay court-ordered restitution.

¶13 Sebastian's revocation hearing was scheduled for October 23, 2012. On October 22, 2012, Sebastian moved for a continuance of the hearing. His motion explained that a "substantial amount of discovery, including blood test results, suspect and witness statement videos or audio recordings, drug recognition expert evaluation reports, 911 call recordings, histories and notes, and names of investigating officers" had not yet been produced. The District Court denied this motion on October 23, 2012. After the hearing, the District Court ordered Sebastian's suspended sentence revoked; ordered him committed to the Department of Corrections for five years; and recommended he be screened for the most intensive chemical dependency treatment program the Department of Corrections had to offer.

5

Sebastian appeals, alleging that his right to due process was violated when the District Court revoked his suspended sentence after denying his motion to continue the revocation hearing, pending full disclosure of the evidence against him.

## STANDARD OF REVIEW

¶14 "A district court's ruling on a motion to continue is subject to the district court's discretion, and this Court reviews the ruling to determine whether the district court abused its discretion." *State v. Morrison*, 2009 MT 397, ¶ 5, 353 Mont. 407, 220 P.3d 659 (citing *State v. Anderson*, 1999 MT 58, ¶ 10, 293 Mont. 472, 977 P.2d 315). "A district court abuses its discretion when it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in a substantial injustice." *State v. Goff*, 2011 MT 6, ¶ 20, 359 Mont. 107, 247 P.3d 715. Generally, this Court reviews a district court's decision to revoke a suspended sentence to determine whether it was supported by a preponderance of the evidence and whether the district court abused its discretion. *State v. Gillingham*, 2008 MT 38, ¶ 17, 341 Mont. 325, 176 P.3d 1075. Where a defendant presents a question of law related to constitutional rights, however, this Court's review is plenary. *Gillingham*, ¶ 17.

## DISCUSSION

¶15 *Did the District Court abuse its discretion by denying Sebastian's motion to continue the revocation hearing when the evidence against him had not been fully disclosed, violating his right to due process?*

¶16 Section 46-18-203, MCA, permits a district court to order a hearing on revocation of a suspended sentence if the State files a petition for revocation which demonstrates probable cause that the probationer has violated any condition of a suspended sentence. When such a hearing occurs, the offender must be brought before a judge and advised of: "(a) the allegations of the petition; (b) the opportunity to appear and to present evidence in [*sic*] the offender's own behalf; (c) the opportunity to question adverse witnesses; and (d) the right to be represented by counsel at the revocation hearing[.]" Section 46-18-203(4), MCA. The State must prove, by a preponderance of the evidence, that the offender has violated the probation conditions. Section 46-18-203(6)(a), MCA. A preponderance of the evidence is "such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth." *State v. Stuit*, 176 Mont. 84, 89, 576 P.2d 264, 267 (1978) (citing *People v. Condley*, 69 Cal. App. 3d 999 (1977)). If the court finds the State has carried this burden, it is within the court's discretion to determine an appropriate action in response to the violation. *State v. Pedersen*, 2003 MT 315, ¶ 17, 318 Mont. 262, 80 P.3d 79 (citing § 46-18-203(7), MCA); *See* § 46-18-203(7), MCA.

¶17 The Fourteenth Amendment of the United States Constitution protects individuals from State action that would deprive them of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. Montana's Constitution also protects this right. Mont. Const. art. II, § 17. At stake in a probation revocation proceeding is a probationer's conditional liberty interest. *Gagnon v. Scarpelli*, 411 U.S. 778, 781, 93 S. Ct. 1756, 1759 (1973).

7

¶18    "The minimum requirements of due process are extended to sentence revocation hearings." *Pedersen*, ¶ 21 (citing *State v. Nelson*, 225 Mont. 215, 218, 731 P.2d 1299, 1302 (1987)). "What is needed is an informal hearing structured to assure that the finding of a parole [or probation] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's [or probationer's] behavior." *Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S. Ct. 2593, 2602 (1972) (although *Morrissey* involved revocation of parole, the United States Supreme Court observed in *Gagnon*, 411 U.S. at 782, 93 S. Ct. at 1759-60, that there is no difference relevant to the guarantee of due process between revocation of parole and revocation of probation; the same standards apply to both). A defendant is entitled to notice of all alleged violations leading to the petition to revoke. *Nelson*, 225 Mont. at 218-19, 731 P.2d at 1302. In addition, a defendant is, upon his request, entitled to question a person who has given adverse information on which parole or probation revocation is to be based. *Morrissey*, 408 U.S. at 487, 92 S. Ct. at 2603.

¶19    A probationer's right to due process in a revocation proceeding is different from the right to due process in a criminal proceeding. We have explained:

> The revocation hearing is not a criminal trial but a summary hearing to establish a violation of the conditions of the prisoner's probation. The probationer already stands convicted of a crime no matter what the grounds for the revocation may be[.]

*State v. Triplett*, 2008 MT 360, ¶ 16, 346 Mont. 383, 195 P.3d 819 (quoting *State v. Kingery*, 239 Mont. 160, 165, 779 P.2d 495, 498 (1989)). As a result, the revocation hearing is not

8

subject to the Montana Rules of Evidence, although it must be fundamentally fair. *Pedersen*, ¶ 20; M. R. Evid. 101(c)(3).

¶20 Sebastian argues that his right to due process was violated at his revocation hearing because the evidence against him was not fully disclosed. For instance, Sebastian argues, the District Court's decision that he had violated the terms of his probation was based partially on the assumption that Sebastian had been driving under the influence on August 10 and August 23. The blood tests from the August 23 incident could have established conclusively whether Sebastian was guilty of the offense charged. The recordings of the 911 calls and disclosure of the witnesses against Sebastian could have helped shed light on whether or not Sebastian was actually intoxicated in these incidents. Without this evidence, or the names of the witnesses against him, Sebastian argues, he was not able to call for testimony that might have corroborated his explanation for the events. Finally, Sebastian argues that he was not provided with a copy of his probation officer's chronological notes, which "should have contained the admissions that [he] allegedly made about some of the condition violations." The lack of disclosure denied Sebastian the ability to put on a proper defense and rendered the revocation hearing fundamentally unfair, he alleges.

¶21 Sebastian argues that disclosure of the evidence against a probationer is one of the requirements necessary to satisfy the "minimal" due process required at a probation revocation hearing. *Pedersen*, ¶ 21. He analogizes to this Court's decision in *Pedersen*, in which we held that the district court erred when it admitted certain drug test results, when the State had not notified Pedersen that the violations would be used against him at his

9

revocation hearing. *Pedersen*, ¶ 22. Pedersen challenged evidence of his drug use presented during his probation revocation hearing, when drug use had not been mentioned as a reason for revocation in the pre-hearing documents. *Pedersen*, ¶ 16. Pedersen argued that he was not on notice that the State would introduce the drug test evidence and, therefore, he had no reason to request the results. *Pedersen*, ¶ 16. This Court held that, although the District Court committed error in allowing the evidence of Pedersen's drug test results, the District Court did not rely on that evidence in making its findings and so the error was harmless. *Pedersen*, ¶ 22.

¶22 Here, Sebastian's probation officer told him that she would be filing a revocation after he admitted to her that he had been misusing his medications and that he had a problem. Sebastian was aware of the allegations in the petition; and that those allegations included allegations he had been driving under the influence. It was for precisely that reason that he moved for a continuance. Unlike Pedersen, Sebastian had the notice of the allegations against him that his "minimal" due process right and § 46-18-203(4), MCA, demanded. The State also points out that the record reflects that Sebastian's counsel had received Sebastian's probation officer's chronological notes and was aware of the witnesses to the August 23 accident at the time of the hearing.

¶23 Sebastian's failure to receive the other evidence he alleges would have been relevant to his defense against the charged violations did not prejudice him, given the weight of the uncontroverted evidence presented at the hearing and his own admissions. The District Court specifically found that the State had not proved that Sebastian drove under the

influence of hydrocodone and methadone related to his August 10 driving incident. As for the August 23 offense, the blood test results were not required to establish that he had violated his conditions of probation. Rather, the testimony of the officer who spoke to him following that incident; his probation officer's observations; and his admissions to his probation officer about his drug use were enough to show by a preponderance of the evidence that he had driven under the influence, in violation of his probation conditions. The use of the officers' testimony to establish the violation by a preponderance of the evidence did not offend Sebastian's right to due process because he was able to question both of these individuals.

¶24     Even if there was additional evidence that had not been produced, the court's decision to revoke Sebastian's suspended sentence on the basis that he violated his probation conditions was not an abuse of discretion. "A single violation of the conditions of a suspended sentence is sufficient to support a district court's revocation of that sentence." *Gillingham*, ¶ 28. To establish a violation, the State only had to show by a preponderance of the evidence that Sebastian violated a single condition of suspension. *See* § 46-18-203(6), MCA. Sebastian himself admitted to crushing and snorting his medications—an illegal method of using them—in his letter to the District Court. He also admitted that he had crushed and snorted his medications and used non-prescribed marijuana to his probation officer. Sebastian's own admissions would be sufficient to support a determination that he had violated the conditions of his probation pertaining to illegal drug use.

11

¶25 The District Court did not abuse its discretion in denying Sebastian's motion to continue or in revoking his suspended sentence. A preponderance of the evidence supported the District Court's determination that Sebastian had violated the conditions of his probation and that revocation of his suspended sentence was necessary. The undisclosed evidence was unnecessary to the District Court's determination. No violation of Sebastian's right to due process occurred. As the District Court observed, "[t]he Defendant clearly has serious medical issues, but he also clearly has severe addiction issues and has never found a successful way to manage his medications without resorting to extra illegal means to do so."

¶26 As a final note, we held in abeyance the State's motion to strike new issues Sebastian raised for the first time in his reply brief. Sebastian argued in his reply brief that the evidence he requested would have given him the opportunity to present circumstances in mitigation of the sentence to be imposed upon revocation. "The reply brief must be confined to new matter raised in the brief of the appellee." M. R. App. P. 12(3). Legal theories raised for the first time in an appellant's reply brief are outside the scope of such a brief and this Court has repeatedly refused to address them. *State v. Sattler*, 1998 MT 57, ¶ 47, 288 Mont. 79, 956 P.2d 54; *State v. Hagen*, 283 Mont. 156, 159, 939 P.2d 994, 996 (1997). We agree that this argument was raised for the first time in Sebastian's reply brief and do not consider it further.

## CONCLUSION

¶27 The District Court did not abuse its discretion, or violate Sebastian's right to due process, when it revoked Sebastian's probation without requiring full disclosure of all evidence against him. Serving his sentence will give Sebastian the opportunity to complete chemical dependency treatment that it seems he sorely needs.

¶28 Affirmed.

/S/ MICHAEL E WHEAT

We concur:

/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BETH BAKER
/S/ LAURIE McKINNON