

DA 15-0639

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 194

IN THE MATTER OF THE ADOPTION OF:

A.W.S. and K.R.S.,

    Minor Children.

J.N.S.,

    Petitioner and Appellee,

    v.

A.W.,

    Respondent and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DA 13-13 and DA 13-14
Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Tracy Labin Rhodes, Attorney at Law, Missoula, Montana

    For Appellee:

    Linda Osorio St. Peter, St. Peter Law Office, P.C., Missoula, Montana

    For Guardian ad Litem:

    Amy N. Guth, Attorney at Law, Libby, Montana

Submitted on Briefs:  June 15, 2016
Decided:  August 16, 2016

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1     A.W. is the biological mother of A.W.S., age 14, and K.R.S., age 13. W.S. is the biological father of the children. J.N.S. is W.S.'s wife and the children's stepmother. This appeal arises out of the Nineteenth Judicial District Court's order terminating Mother's parental rights and granting Stepmother's petition for adoption. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     This is the second appeal to come before this Court in this matter. The relevant facts leading to the first appeal are set forth in *In the Matter of the Adoption of A.W.S. and K.R.S., Minor Children*, 2014 MT 322, 377 Mont. 234, 339 P.3d 414 (*A.W.S. I*). Those facts will not be repeated in this Opinion except as required for context.

¶3     In *A.W.S. I,* we reversed the District Court's termination of Mother's parental rights and order of adoption on constitutional grounds, holding that indigent Mother was disadvantaged by her inability to obtain counsel for the termination proceeding and was therefore entitled to appointed counsel. *A.W.S. I*, ¶ 26. We ordered the matter remanded to the District Court with instructions that the court determine if Mother qualified for appointed counsel and, if so, directing it to appoint counsel and conduct another termination hearing. *A.W.S. I*, ¶ 28.

¶4     On December 26, 2014, immediately following remand of this matter, the District Court appointed a guardian ad litem (GAL) for the children and Office of the Public Defender (OPD) counsel for Mother subject to a determination of Mother's eligibility. On January 6, 2015, OPD moved to have the appointment vacated on the grounds that the Montana Public Defender Act did not authorize OPD to represent parties in an action

2

filed under the Montana Adoption Act. On February 11, 2015, the District Court denied OPD's motion to vacate the appointment of counsel. On February 20, an OPD attorney appeared on behalf of Mother. On March 24, 2015, Mother's original OPD counsel retired and Mother was assigned new OPD counsel. On May 13, 2015, the adoption hearing was scheduled for June 18, 2015.

¶5 On June 9, 2015, the GAL interviewed A.W.S. and K.R.S. On June 13, 2015, Mother's counsel moved to continue the hearing requesting additional time to, among other things, "research and develop novel constitutional arguments" pertaining to private involuntary terminations and Montana's private termination statutes. On June 15, the GAL filed her post-interview Report supporting the petition for adoption and urging the court to expeditiously resolve the matter as the children were experiencing heightened anxiety over the protracted legal proceedings following this Court's issuance of *A.W.S. I.* On that same day, Stepmother and the GAL filed objections to Mother's request for continuance, arguing that the request with its concomitant change in legal theory five days before the scheduled hearing was untimely and could have been raised earlier. Additionally, they asserted that granting the motion would be prejudicial to Stepmother and the children and was not in the best interests of the children. In addition, on June 15, Mother filed her first motion to dismiss claiming that termination proceedings under the Act violate the 14th Amendment to the United States Constitution and Article II, Section 4 of the Montana Constitution.

¶6 On June 16, 2015, the District Court denied Mother's motion for a continuance stating that "the constitutional issues outlined in [Mother's] motion could have been

3

raised on the initial appeal." The District Court predicated its conclusion primarily on the best interests of the children. Noting that considerable time had elapsed since the remand of the case and referring to the GAL's objection to a continuance, the court concluded that these children should not be kept on "tenterhooks through their youth." Also on June 16, Mother filed her second motion to dismiss acknowledging that because the court denied her motion to continue, Mother's constitutional argument "is not fully developed." Mother therefore set forth a short 5-point summary that would provide the foundation for her argument. Mother's second motion to dismiss is deemed denied.

¶7 The court conducted a hearing on June 18, 2015, at which all parties were represented by counsel. On July 22, Mother filed proposed Findings of Fact, Conclusions of Law, and Order in which she presented an argument that the Montana Adoption Act was unconstitutional. On September 21, 2015, the court issued its Findings of Fact, Conclusions of Law, and Order, terminating Mother's parental rights and granting Stepmother's petition for adoption.

¶8 Mother appeals.

**ISSUES**

¶9 A restatement of the issues on appeal is:

¶10 Did the District Court err in declining to entertain Mother's constitutional argument?

¶11 Did the District Court err in finding that Mother was unfit?

¶12 Did the District Court abuse its discretion in terminating Mother's parental rights?

¶13 Was Mother denied effective assistance of counsel?

4

**STANDARDS OF REVIEW**

¶14    We review a district court's ruling on a motion to continue for an abuse of discretion.  A district court abuses its discretion when it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in a substantial injustice.  *State v. Sebastian*, 2013 MT 347, ¶ 14, 372 Mont. 522, 313 P.3d 198 (internal citations omitted).

¶15    We review a district court's findings of fact supporting termination of parental rights to determine whether they are clearly erroneous. We review a court's conclusions of law to determine if they are correct.  *In re Matter of B.B.*, 2006 MT 66, ¶ 17, 331 Mont. 407, 133 P.3d 215 (citations omitted).

¶16    We review a district court's decision to terminate parental rights for an abuse of discretion.  An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason.  *J.M. v. R.H.* (*In re J.W.M.*), 2015 MT 231, ¶ 11, 380 Mont. 282, 354 P.3d 626 (citations omitted).

¶17    Claims of ineffective assistance of counsel present mixed questions of law and fact that we review de novo.  *State v. Root*, 2015 MT 310, ¶ 8, 381 Mont. 314, 359 P.3d 1088.

**DISCUSSION**

¶18    *Did the District Court err in declining to entertain Mother's constitutional argument?*

¶19    On appeal, Mother asserts that the provisions of the Montana Adoption Act are unconstitutional.  She maintains that the District Court erred when it applied the unconstitutional provisions of the act to determine that she was unfit and to terminate her

parental rights. She argues that her repeated attempts beginning on June 13, 2015, to raise the issue of the constitutionality of the Montana Adoption Act in the District Court preserved the issue on appeal and we are obligated to review it. We disagree.

¶20 Mother did not raise her constitutional argument until three to five days before the date set for the hearing on the petition for adoption. OPD was notified on December 26, 2014, of its obligation to represent Mother in this matter. Between this notice and the June 18, 2015 hearing date, OPD filed several motions on Mother's behalf, but none raised the argument that the Montana Adoption Act was unconstitutional until its June 13 motion was filed.

¶21 The District Court has broad discretion when determining whether to grant a motion for continuance. *Sebastian*, ¶ 14. Here, as further addressed below, the court was presented with an already protracted legal proceeding involving children who were understandably apprehensive about what their future would hold. Given this situation as well as the timing of the motion to continue premised upon a newly conceived constitutional argument, we cannot conclude that the District Court acted arbitrarily or beyond the bounds of reason in declining Mother's request to postpone the adoption hearing so that she could develop her constitutional arguments. We therefore conclude that the District Court did not err in declining to address Mother's constitutional arguments. Because these arguments were not addressed in the District Court, we decline to address them for the first time on appeal. *Schlemmer v. N. Cent. Life Ins. Co.*, 2001 MT 256, ¶ 22, 307 Mont. 203, 37 P.3d 63 (citation omitted).

¶22    *Did the District Court err in finding that Mother was unfit?*

¶23    Mother further argues that the District Court erred in finding that she was unfit under § 42-2-608(1)(b), (c), and (h), MCA.  Section 42-2-608, MCA, provides in relevant part:

> (1)  The court may terminate parental rights for purposes of making a child available for adoption on the grounds of unfitness if:
>
> .    .    .
>
> (b)  the parent has willfully abandoned the child, as defined in 41-3-102 . . .;
> (c)  it is proven to the satisfaction of the court that the parent, if able, has not contributed to the support of the child for an aggregate period of 1 year before the filing of a petition for adoption;
>
> .    .    .
>
> (h)  a finding is made for a parent who is given proper notice of hearing and is a respondent to the petition to terminate parental rights and:
>> (i)  by a preponderance of the evidence, it is found that termination is in the best interests of the child; and
>> (ii) upon clear and convincing evidence, it is found that one of the following grounds exists:
>
> .    .    .
>
> (D) failure to terminate the relationship of parent and child would be detrimental to the child.

¶24    The District Court found that the 2007 dissolution decree/parenting plan required Mother to pay monthly child support and granted her generous visitation rights.  The court further found that from 2007–2009, as reported by the children to the GAL, Mother slept through much of their visits or was away from home.  The children also disclosed that they were left in their grandmother's care and frequently visited neighbors asking for food.

¶25    In 2009, Mother was arrested for burglary and given a probationary sentence with a restitution obligation.  Based upon the children's reports and Mother's arrest, Father

requested modification of the visitation arrangement seeking supervised visits only for Mother. Father testified that the children had witnessed Mother and others living at or visiting Mother's household purchasing and using illegal drugs. He further testified that Mother frequently returned the children dirty, in ill-fitting clothes not suitable for the season, and hungry. The District Court adopted an amended parenting plan in July 2009, and ordered Mother to pay for the cost of supervision in lieu of child support. It is undisputed that Mother has not paid child support since the 2007 dissolution. The record is somewhat unclear but it appears that she paid for a single supervised visit.

¶26 After the parenting plan was amended, Mother's visits with the children were limited and sporadic and ceased entirely in August 2010. Mother claimed that following the August 2010 visit, Father interfered with visitation. However, the District Court found that Father did "not intend[ ] to frustrate or interfere with the Mother's relationship to the children," but rather his actions were a reflection that Father "had [no] obligation to the Mother to further her parenting when the Mother expressed no interest in doing so on her own accord."

¶27 The court acknowledged that Mother claimed that since 2007 she was financially unable to pay child support or pay for supervised visits. The court noted however that during this time, Mother, who worked intermittently, maintained contact with her boyfriend, now husband, while he was incarcerated in another city, maintained contact with her eldest son by a previous relationship while he was incarcerated at Pine Hills, and paid off her restitution. The District Court found that Mother had multiple opportunities to contribute to her children's care during these years and chose not to do so.

8

¶28 The court devoted substantial discussion in its findings of fact to the potential threat to the children by Mother's husband, a registered violent offender, and oldest son, a registered sex offender. It expressed concern that Mother was married to a man serving a sentence for Partner/Family Member Assault following his third such offense which involved Mother and their then four-month-old son. The court also noted that Mother's oldest son, who had sexually assaulted a minor cousin, was recently released from Pine Hills and would be spending time with Mother in her home. The District Court observed that Mother minimized the potential danger to the children through exposure to her husband and son just as she had minimized the neglect the children had experienced during early visitation. Lastly, the court interviewed the children who unequivocally stated that they wanted Stepmother to adopt them.

¶29 Mother argues on appeal that because the amended parenting agreement obligated her to pay for supervised visitation in lieu of monthly child support she cannot be found unfit based upon failure to pay child support. She further asserts that she did not willfully abandon her children; rather, she was forced to stop visits by Father, Stepmother, the District Court, and her inability to hire an attorney. Mother maintains that she has been sober for five years and that the record does not support a showing that she poses "any risk of substantial harm to the children presently." Mother's argument is unpersuasive. Mother was relieved of child support to allow her to use her limited funds for supervised visitation. Both child support and payment for supervised visits are designed in part to contribute to a parent/child relationship and/or a child's well-being, whether through a monetary contribution or time spent together creating and maintaining a parental bond.

9

Mother failed to do either. We acknowledge that Mother experienced difficulty in trying to arrange visitation with her children following the August 2010 visit and attempted for a short period to seek modification of the parenting plan's visitation arrangements. However, she abandoned such attempts claiming she could not afford an attorney to assist her. Nonetheless, when an attorney was appointed for her in December 2014 to represent her in this proceeding, Mother made no requests that counsel help her arrange for visitation.

¶30 The reality is that Mother and the children have not spent time together since 2010. The children, who were 7 and 8 at the last visit, are now 13 and 14. They have not spoken with their mother nor corresponded by letter. They recall the stress they experienced in their mother's earlier care and assert they have no bond with her nor a desire to continue a relationship. They repeatedly told the District Court and the GAL that they wanted Stepmother's petition for adoption to be granted.

¶31 Abandon means, among other things, "willfully surrendering physical custody for a period of 6 months and during that period not manifesting to the child and the person having physical custody of the child a firm intention to resume physical custody . . . ." Section 41-3-102(1)(ii), MCA. Despite the hardships Mother recited in her testimony, we cannot conclude that the District Court's findings that she abandoned the children or did not pay support for the children are clearly erroneous. Moreover, the court's findings regarding the potential danger to the children from Mother's husband and older son are supported by the record and likewise are not clearly erroneous. The District Court's conclusions of law based upon these findings are not incorrect. Finally, the District Court

10

carefully and correctly considered the best interests of the children and determined that such best interests were met by terminating Mother's parental rights and allowing Stepmother to adopt the children. These findings are supported by the record and support the District Court's determination that Mother is unfit. We will not disturb them.

¶32 *Did the District Court abuse its discretion in terminating Mother's parental rights?*

¶33 As we have determined that the District Court correctly interpreted and applied § 42-2-608(1)(b), (c), and (h), MCA, and concluded that Mother is unfit, and that it is in the best interests of the children to be adopted by Stepmother, we will vacate this ruling only in the event the District Court abused its discretion. As stated above, a district court abuses its discretion when it acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *In re J.W.M.*, ¶ 11. In this case, the court neither acted arbitrarily nor exceeded the bounds of reason.

¶34 *Was Mother denied effective assistance of counsel?*

¶35 At the close of the hearing, OPD counsel submitted an offer of proof "of his incompetency and lack of preparation." He reminded the court that he was inexperienced in this area of the law and noted that after his initial motion to vacate the appointment, "there was a lack of trust between himself and his client." He highlighted multiple examples of his inexperience and unpreparedness. The District Court held that counsel's performance was within the range of competence of attorneys in similar cases. The court noted that Mother had the opportunity to timely raise constitutional claims and that her failure to do so was a matter of strategy and not lack of opportunity.

11

¶36 On appeal, Mother asserts that OPD counsel provided ineffective representation because counsel "did not have training and experience in representing clients in terminations under the Montana Adoption Act, and was unprepared for the termination hearing."

¶37 When addressing a claim of IAC, we review "a trial counsel's (1) training and experience, and (2) advocacy skills, in determining whether assistance was ineffective. Only if the parent suffered prejudice, however, will this Court determine that trial counsel's ineffective performance warrants reversal." *In re B.M.*, 2010 MT 114, ¶ 22, 356 Mont. 327, 233 P.3d 338 (citations omitted).

¶38 Notwithstanding counsel's belated IAC arguments, we decline to disturb the District Court's finding that the performance of counsel was within the range of competence required of attorneys in similar cases. Counsel ably advocated for his client at the adoption hearing. Moreover, we cannot conclude that his failure to raise the constitutional issue earlier in the proceeding was based upon poor training or inexperience, nor can we conclude under the facts before us that Mother was prejudiced by counsel's performance. We therefore conclude that Mother was not denied the effective assistance of counsel.

## CONCLUSION

¶39 For the foregoing reasons, we affirm the District Court's termination of Mother's parental rights and its granting of Stepmother's Petition for Adoption.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE