DA 19-0018

FILED

10/20/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0018

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 264

STATE OF MONTANA,

   Plaintiff and Appellee,

 v.

BJORN MARTIN HAYES FETVEIT,

   Defendant and Appellant.

APPEAL FROM:  District Court of the Eleventh Judicial District,
       In and For the County of Flathead, Cause No. DC-15-257(D)
       Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     Chad Wright, Appellate Defender, Kathryn Hutchison, Assistant Appellate
     Defender, Helena, Montana

   For Appellee:

     Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
     Attorney General, Helena, Montana

     Travis R. Ahner, Flathead County Attorney, Alison Howard, Deputy
     County Attorney, Kalispell, Montana

        Submitted on Briefs: August 19, 2020

           Decided: October 20, 2020

Filed:

             _____
                  Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Bjorn Fetveit appeals an Eleventh Judicial District Court order revoking Fetveit's deferred sentence for criminal possession of dangerous drugs. We affirm.

¶2    We address the following issues on appeal:

*Issue One: Whether the District Court violated Fetveit's Sixth Amendment right to confront witnesses against him by relying on statements made in the Report of Violation by his previous probation officer.*

*Issue Two: Whether the State presented sufficient evidence at Fetveit's revocation hearing to establish that he absconded.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On March 8, 2016, Bjorn Fetveit pleaded guilty to Criminal Possession of Dangerous Drugs via an *Alford* plea. In May 2016, the District Court accepted the plea and sentenced Fetveit to three years, all suspended, in the Montana State Prison subject to 31 conditions of probation. These conditions included requiring Fetveit to get permission from his probation officer to change residences, mandating that Fetveit report to his probation officer as directed by the officer, ordering Fetveit to abstain from possessing or using illegal drugs, and requiring that Fetveit not have or use weapons at any time.

¶4    In March 2017 Fetveit's Probation Officer James Brenden (Brenden) filed a Report of Violation alleging several probation condition violations, and the Flathead County Attorney filed a petition for revocation of Fetveit's suspended sentence. On April 27, 2017, the District Court held a revocation hearing where Fetveit admitted to several violations. Notably, Fetveit admitted that he failed to report to his probation officer during the months

of August, October, November, and December 2016, and January and February 2017. He acknowledged that failing to report during those months was absconding.

¶5 The District Court revoked Fetveit's suspended sentence and re-sentenced Fetveit to his previous three-year sentence and again suspended all three years. The District Court ordered Fetveit to comply with each condition of his probation and parole imposed by his 2016 sentence and as an added condition enroll in the Montana Chemical Dependency Center (MCDC) treatment program within 30 days of the Order.[1] Fetveit signed his new conditions of supervision with Brenden on May 1, 2017.

¶6 On May 21, 2018, Brenden filed a new Report of Violation which identified three probation condition violations. The report alleged that Fetveit had failed to report for his scheduled office meetings with his probation officer each month from July 2017 to May 2018. Fetveit's failure to report was listed as a non-compliance violation. The other two alleged violations in the report were compliance violations. Brenden attempted to contact Fetveit on May 1, May 11, June 1, June 15, and July 13, 2017.

¶7 On May 22, 2018, the Flathead County Attorney filed a second petition for revocation of suspended sentence claiming Fetveit violated three conditions of his probation, including absconding. On November 8, 2018, the District Court held a revocation hearing. Fetveit's current probation officer at the time, Brianne Marshall, testified. Brenden did not testify.

---

[1] Fetveit failed to enroll within 30 days, but eventually completed treatment on September 6, 2018, at MCDC.

¶8     Marshall testified using the Report of Violation as well as her own supervision experiences. Marshall verified that the records at Probation & Parole supported the allegations in the report written by Brenden. Specifically, she noted Fetveit failed to report each month from August 2017 to May 2018. She testified that after approximately three months of failure to report, she would consider the probationer to have absconded. The report also indicated that on May 17, 2018, Brenden spoke with Salinda Lechner, Fetveit's friend, who advised Brenden that Fetveit had been living in his parents' garage off and on because he wanted to "get clean" prior to reporting again to his probation officer. As outlined in the report, Lechner told Brenden that Fetveit told her he was absconding. Marshall testified that Fetveit told her that he used methamphetamine three days after he completed treatment with MCDC.

¶9     Following an initial objection based on constitutionality, the District Court asked defense counsel if the defense position was that the court could not rely on the written statements made by Brenden in his report. Defense counsel responded, "Your Honor, I wouldn't make that argument . . . ." The court found that Fetveit failed to report from August 2017 to May 2018, and that Brenden attempted to contact Fetveit by telephone multiple times during that period. The court determined that Fetveit had absconded from supervision.

**STANDARD OF REVIEW**

¶10    We review a district court's decision to revoke a suspended sentence to determine whether the district court's decision was supported by a preponderance of the evidence, and if it was, whether the court abused its discretion. *State v. Goff*, 2011 MT 6, ¶ 13, 359

4

Mont. 107, 247 P.3d 715 (citations omitted). A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Weldele*, 2003 MT 117, ¶ 72, 315 Mont. 452, 69 P.3d 1162 (citation omitted).

## DISCUSSION

¶11 *Issue One: Whether the District Court violated Fetveit's Sixth Amendment right to confront witnesses against him by relying on statements made in the Report of Violation by his previous probation officer.*

¶12 Fetveit argues that he had the right to confront and cross-examine Brenden. Fetveit argues that the District Court revoked his suspended sentence based solely on hearsay statements contained in Brenden's Report of Violation.

¶13 "The minimum requirements of due process are extended to sentence revocation hearings." *State v. Sebastian*, 2013 MT 347, ¶ 18, 372 Mont. 522, 313 P.3d 198 (citations omitted). Prior to the revocation hearing, the probationer has already been convicted of a crime and thus the revocation hearing is a summary hearing where the State can establish condition violations. *Sebastian*, ¶ 19 (citations omitted). Revocation hearings are not subject to the Montana Rules of Evidence, although they need to be fundamentally fair. *Sebastian*, ¶ 19 (citations omitted).

¶14 The District Court did not violate Fetveit's Sixth Amendment right to confront witnesses against him by relying on statements made in Brenden's report. Reports of Violation are properly used as evidence in revocation proceedings where the due process requirements consist of: written notice of the violations; disclosure of evidence against the probationer; opportunity to be heard in person and to present evidence and witnesses; a

5

neutral tribunal; a written statement by the factfinder as to the evidence relied on and the reasons for revocation; the right to cross-examine witnesses unless the hearing body finds good cause for disallowing confrontation; and the right to counsel. *State v. Kingery*, 239 Mont. 160, 165, 779 P.2d 495 (1989) (citations omitted). These requirements do not prevent courts from using documentary evidence that may not meet usual evidentiary requirements. *U.S. v. Simmons*, 812 F.2d 561, 564 (9th Cir. 1987) (citation omitted). Marshall verified the contents of the report and testified about her own experiences supervising Fetveit, particularly his failing to report repeatedly for months. The District Court's reliance on all the material in the record including the statement that Fetveit was purposefully absconding was not an abuse of discretion.

¶15 *Issue Two: Whether the State presented sufficient evidence at Fetveit's revocation hearing to establish that he absconded.*

¶16 Due to prison overcrowding, high recidivism of first-time criminal offenders, and issues in criminal justice related to the growing problems with substance abuse in the state, the Montana Legislature enacted S.B. 224 to establish the Commission on Sentencing in 2015. *State v. Oropeza*, 2020 MT 16, 398 Mont. 379, 456 P.3d 1023. One of the initiatives was S.B. 59, which required the Department of Corrections (DOC) to adopt, maintain, and implement the policy known as the Montana Incentives and Interventions Grid for Adult Probation & Parole ("MIIG") in order to guide supervision of offenders. *Oropeza*, ¶ 4 (citation omitted).

¶17 The MIIG provides guidelines for probation and parole officers that create consistency with incentives and interventions for offenders. *Oropeza*, ¶ 5. Positive

6

behaviors are incentivized, and when offenders violate conditions of their probation or parole, the MIIG provides guidance on what intervention response should be utilized. *Oropeza*, ¶ 5. The MIIG also separates condition violations into two categories: compliance and non-compliance. Section 46-18-203(7) through (12), MCA. Most violations are categorized as compliance violations and cannot result in an automatic revocation of a deferred or suspended sentence. Compliance violations must instead be addressed utilizing the MIIG procedures. Non-compliance violations, including absconding, can result in a direct revocation and are not subject to the MIIG procedures. Section 46-18-203(7)(a)(iii), MCA.

¶18 Fetveit argues that § 46-18-203(11)(a), MCA, distinguishes absconding from a simple failure to report and that the District Court erred in finding that Fetveit failed to report for the purpose of avoiding supervision. Fetveit also argues that the District Court erred in finding that the probation officer made reasonable efforts to locate Fetveit. The statute denotes "absconding" to mean "when an offender deliberately makes the offender's whereabouts unknown to a probation and parole officer or fails to report for the purpose of avoiding supervision, *and* reasonable efforts by the probation and parole officer to locate the offender have been unsuccessful." Section 46-18-203(11)(a), MCA (emphasis added). Compliance violations are defined in the negative to mean violations that are not absconding or other serious violations such as a new criminal offense. Section 46-18-203(11)(b)(i)-(v), MCA. Thus, absconding is defined to be more serious than a compliance violation.

¶19 The District Court did not abuse its discretion by holding that Fetveit absconded. As noted above, the court must find both that the probationer failed to report for the purpose of avoiding supervision and that reasonable efforts by the officer have been unsuccessful. Section 46-18-203(11)(a), MCA; *see Oropeza*, ¶ 17.

¶20 On May 1, 2017, Fetveit signed his new conditions of supervision following his first revocation hearing. In July 2017 he began failing to report to his probation officer. He continued failing to report for the next ten months. Marshall stated that she began supervising Fetveit in July 2018 and that Fetveit failed to report to her. Fetveit himself admitted to absconding in his first revocation hearing. Fetveit knew that avoiding his probation officer for long periods of time amounted to absconding, and yet for ten months prior to his second revocation he failed to report.

¶21 The District Court also correctly concluded that the probation officer made "reasonable efforts" to contact Fetveit. Brenden attempted to contact Fetveit multiple times by phone from August 10, 2017, to March 5, 2018. In May 2018 Brenden spoke with Lechner, the woman Fetveit was with when he got arrested, who advised Brenden that Fetveit told her he was "absconding" and that he wanted to "get clean" before he saw his probation officer again. Fetveit failed to report to or attempt to contact his probation officer for over ten months despite Brenden's repeated efforts to contact him.

¶22 Repeated efforts by the probation office to reach Fetveit, and his failure to report or even attempt to contact his probation officer established sufficient evidence for the District Court to determine that Fetveit absconded within the definition of § 46-18-203(11)(a), MCA.

# CONCLUSION

¶23   The District Court did not violate Fetveit's Sixth Amendment right to confront witnesses during his revocation hearing.  The District Court did not abuse its discretion in determining Fetveit absconded.  The District Court's conclusion is supported by substantial evidence that Fetveit failed to report for the purpose of avoiding supervision and that the probation office made reasonable efforts to contact him.

¶24   Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE