FILED

12/09/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0186

DA 24-0186

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2025 MT 283N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JUSTIN ALLEN PETTIT,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDC-06-368(B)
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Brian Owens, Law Office of Brian Owens, Whitefish, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant Attorney General, Helena, Montana

      Joshua A. Racki, Cascade County Attorney, Amanda Lofink, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  November 13, 2025

Decided:  December 9, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Justin Allen Pettit (Pettit) appeals from the February 5, 2024 Dispositional Judgment entered in the Eighth Judicial District Court, Cascade County, revoking his suspended sentence. We affirm.

¶3 Pettit pleaded guilty to one count of felony Sexual Assault, in violation of § 45-5-502(1), (3) and (5)(b), MCA, on October 11, 2007. Pursuant to his plea agreement, Pettit was sentenced to a 20-year term under the supervision of the Department of Corrections (DOC), with 16 years suspended. On February 14, 2013, after Pettit had served his period of incarceration at the Montana State Prison (MSP) and was released on supervision to Missoula Probation and Parole (P&P), the State petitioned for revocation. The Court revoked his suspended sentence and resentenced Pettit to the DOC for 16 years, all time suspended. The State again revoked his suspended sentence on April 15, 2013, and Pettit was resentenced to 16 years under DOC supervision with 12 years suspended. Following his release from MSP in 2016, Pettit was again released to the supervision of P&P.

2

¶4 The State filed a petition to revoke on May 26, 2023, alleging one non-compliance violation and four compliance violations by Pettit. The non-compliance violation resulted from Pettit's termination from sex offender treatment. The four compliance violations stemmed from Pettit's possession of two unauthorized internet-capable devices, Pettit traveling to areas off-limits under the terms of his suspended sentence, possession and creation of pornography, and Pettit spending time with a 15-year-old he had corresponded with on social media. On August 15, 2023, the State filed a notice of an additional non-compliance violation by Pettit after he was charged by the city of Missoula with misdemeanor Endangering the Welfare of a Child because he was alleged to have provided marijuana to a 15-year-old boy in his hotel room. The court held an evidentiary and dispositional hearing on February 5, 2024. At the hearing, Pettit agreed to admit "true" to being terminated from sex offender treatment and the State withdrew the other violations. The parties agreed that this single violation was sufficient to revoke Pettit's sentence.

¶5 During the dispositional phase of the hearing, the State called Pettit's P&P supervisor to testify to the circumstances surrounding the reports of violations. The supervisor stated that Pettit's transition to supervised release had been "abysmal." She stated, "Though we have dismissed a whole bunch of counts here [. . .] He was around minors. He had minor boys in his car. He was ticketed for providing marijuana to a minor boy in his hotel room." Further, she noted repeated issues with Pettit frequenting places where minors congregate as well as unauthorized possession of two phones, which he used

to access pornography and contact minors on social media in violation of the terms of his suspended sentence.

¶6     At this point in the supervisor's testimony, Pettit, through his attorney, objected on "fundamental due process" grounds. Pettit's attorney alleged the State never provided him with the evidence to be used against Pettit in the revocation proceedings, including email correspondence from Pettit's P&P supervisor which Pettit claimed gave him permission to "go to places where he shouldn't have been going." The State countered that these emails simply did not exist and Pettit "was never given permission to go [to those places]." Pettit further asserted the State had failed to provide search warrants and other information related to unauthorized, internet-capable cell phones. Pettit argued that the failure of the State to produce this evidence amounted to failing to give notice of the allegations against him. The District Court overruled the objection, finding that the petition to revoke adequately provided notice to Pettit.

¶7     The P&P supervisor continued testifying. She did not believe Pettit could be adequately supervised in the community any longer and agreed with the State's recommendation to sentence Pettit to his remaining 12 years to the DOC with "no time suspended." On cross-examination of the supervisor, the supervisor acknowledged the seized devices contained no child sexual abuse materials. Pettit did not question the supervisor about the alleged emails granting permission to visit certain locations.

¶8     Pettit presented testimony from a recent employer and from the person that chaperoned Pettit. The latter testified to time spent with Pettit, including going for a walk

4

with Pettit at a park adjacent to a high school. The chaperone asserted that he suggested that park as a location, not Pettit. On cross-examination, the chaperone denied knowing the park was off-limits to Pettit.

¶9      The court revoked Pettit's suspended sentence and committed him to the custody of the DOC for the remaining 12 years of his sentence, with credit for 280 days of time served and 1.5 years of street time. Pettit now appeals.

¶10     On appeal, Pettit argues he was denied due process in the revocation proceedings. First, he alleges the State improperly relied on the allegations contained within the withdrawn violations at disposition. Second, he alleges the State further denied him access to the discovery materials relevant to those violations, specifically that the State failed to produce emails in which his P&P supervisor had permitted him to travel to locations otherwise forbidden under the terms of his suspended sentence. Further, he argues the court improperly relied on facts related to the withdrawn violations.

¶11     Generally, this Court reviews a district court's decision to revoke a suspended sentence to determine whether it was supported by a preponderance of the evidence and whether the district court abused its discretion. *State v. Sebastian*, 2013 MT 347, ¶ 14, 372 Mont. 522, 313 P.3d 198. However, when the defendant presents a question of law related to constitutional rights, our review is plenary. *Sebastian*, ¶ 14.

¶12     Both the United States Constitution and Montana Constitution protect individuals from deprivations of life, liberty, and property without due process of law. *Sebastian*, ¶ 17 (citing U.S. Const. amend. XIV, § 1; Mont. Const. art II, § 17). A probationer's conditional

liberty interest is at stake in a probation revocation proceeding. *Sebastian*, ¶ 17 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 781, 93 S. Ct. 1756, 1759 (1973)). Thus, a probationer facing possible revocation is entitled to the "minimum requirements of due process" in sentence revocation hearings. *State v. Pedersen*, 2003 MT 315, ¶ 21, 318 Mont. 262, 80 P.3d 79 (citations omitted). "What is needed is an informal hearing structured to assure that the finding of a parole [or probation] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's [or probationer's] behavior." *Sebastian*, ¶ 18 (citing *Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S. Ct. 2593, 2602 (1972); *Gagnon*, 411 U.S. at 782, 93 S. Ct. at 1759-60) (insertions in original). The right to due process in revocation proceedings differs from the right to due process in a criminal proceeding because a revocation hearing is not a criminal trial but a "summary hearing to establish a violation of the [probation] conditions[.]" *Sebastian*, ¶ 19 (quotation omitted). The minimum due process requirements in a revocation proceeding include:

> (a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole.

*Gagnon*, 411 U.S. at 786, 93 S. Ct. at 1761-62 (quotation omitted).

¶13   Here, Pettit's asserted failures by the State to disclose evidence are unsupported by the record. First, Pettit's demand for the emails fails because the requested emails do not

exist.  Moreover, when presented with the opportunity to examine the P&P supervisor regarding these alleged emails, he did not do so.  Ostensibly, Pettit should have also had possession of these emails which he claims granted him permission, but he likewise did not produce them.

¶14    Second, Pettit alleges the State failed to disclose information related to search warrants issued for his cell phones despite the State providing the reports to his counsel. We cannot ascertain what Pettit hoped to gain from these warrants, let alone what relevance the information contained therein might have had on the instant case.  Although the two devices searched contained no illegal evidence, the mere possession of the two internet-capable devices without authorization from P&P was itself a violation of the terms of Pettit's probation.  Regardless, Pettit admitted to one of the State's violations, which alone was sufficient to justify revocation.

¶15    Pettit further argues the court impermissibly relied on the dismissed probation violations, but we likewise do not find this violated his due process rights.  Due process protects a defendant from being sentenced based on misinformation.  *State v. Walker*, 2007 MT 205, ¶ 22, 338 Mont. 529, 167 P.3d 879, *overruled on other grounds by City of Kalispell v. Salsgiver*, 2019 MT 126, ¶¶ 42, 44, 396 Mont. 57, 443 P.3d 504.  A court may consider any relevant information relating to the nature and circumstances of the crime, the character of the defendant, the defendant's background and history, the defendant's mental and physical condition, and any other information that the sentencing court deems to have

probative force, including other acts even if those resulted in acquittal or dismissal pursuant to a plea agreement. *Walker*, ¶ 21 (citations omitted).

¶16     Here, as the District Court noted, the petition for revocation and accompanying affidavit provided Pettit with ample notice of the State's allegations against him. The hearing provided him with the opportunity to present his own case and, indeed, he put on two witnesses. We note that Pettit does not allege misinformation formed the basis of his revocation, merely that the court impermissibly considered evidence related to the withdrawn allegations. It is undisputed that the violation Pettit admitted to warranted revocation alone. Pettit cannot claim ignorance of the other violations, as the State provided adequate notice of those violations and the conduct giving rise to them. The court could—and did—consider other conduct of Pettit, especially that involving children and his incompatibility with supervision, in revoking his suspended sentence. Pettit also presented witnesses who testified in his favor and cross-examined the P&P supervisor. The resulting sentence on revocation was within the parameters of his original sentence and comported with the recommendation of the State and his P&P supervisor. Accordingly, the District Court did not err in considering conduct giving rise to the withdrawn violations.

¶17     Ultimately, we cannot say Pettit was denied a fundamentally fair revocation proceeding. He had adequate notice of the alleged violations, admitted true to one violation sufficient to warrant the revocation of his suspended sentence, and was afforded the opportunity to present evidence in his defense and to cross-examine adverse witnesses.

Accordingly, we affirm the District Court's revocation of his suspended sentence and his commitment to the DOC.

¶18    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶19    Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE